**FRANKLIN BANK, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity and as receiver for Financial Center Bank, N.A., Defendant.**

**No. C–93–1373 WHO.**

United States District Court,
N.D. California.

April 13, 1994.

Patricia L. McClaran, Mark Joseph Kenney, Severson & Werson, San Francisco, CA, for plaintiff.

Miriam S. Aguiar, Catherine T. Yoshii, F.D.I.C., Legal Div., San Jose, CA, for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

In 1989, the Congress of the United States, reacting to the dramatic increase in bank failures, adopted the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, § 212(d) (codified as amended at the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)).

This action brought by plaintiff, Franklin Bank ("Franklin"), an approved creditor of the receivership estate of Financial Center Bank, N.A. ("Financial Center"), against defendant, Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver for Financial Center, raises a question not heretofore put to the Supreme Court or any United States Court of Appeals, namely: Does FIRREA give the FDIC power to make payment to an approved creditor of a failed bank by delivering a "Certificate of Award" rather than payment in cash? The parties pose this issue by cross-motions for summary judgment.[1] In ruling that FIRREA gives the FDIC power to make payment by a Certificate of Award, the Court, for the reasons hereinafter stated, grants FDIC's motion for summary judgment and denies Franklin's motion for summary judgment.

### I.

#### A.

The facts are summarized as follows:[2]

In March 1990, Franklin and Financial Center entered into a Master Whole Loan Sale Agreement ("Agreement") pursuant to which Financial Center sold to Franklin a pool of loans secured by first and second deeds of trust on single-family residential real property, including the Bloyer Loan and the Nielson Loan. The Agreement contained warranties and representations concerning the loans Franklin purchased, and obligations of Financial Center to repurchase any loan for which the warranties and representations were breached. The borrowers on both the Bloyer Loan and the Nielson Loan defaulted, and the two properties were foreclosed upon. The Nielson property was sold at a loss to Franklin; the Bloyer property has never been sold and Franklin still holds title to the property.

Financial Center refused to repurchase the Bloyer loan and compensate Franklin for the loss on the Nielson loan, as it was obligated to do under the Agreement. Franklin filed an arbitration action against Financial Cen-

---

1. Franklin Bank dismissed its first cause of action for failure to make ratable distributions after the FDIC agreed to resume making ratable distributions to Franklin. Franklin and the FDIC have entered into a settlement of the third cause of action for repudiation of contract, whereby Franklin is retaining the Bloyer property in exchange for a dismissal of Franklin's $125,000 claim for the FDIC's repudiation of the Master Whole Loan Sale Agreement.

2. This brief summary of the facts is taken from the Stipulated Set of Undisputed Facts in Support of Plaintiff's and Defendant's Motions for Summary Judgment ("Stipulated Facts"), filed December 17, 1993.

ter. Prior to May 4, 1992 (the date Financial Center was declared insolvent), an Award ("Award") was rendered that awarded Franklin $477,434.98 in damages. The Award also stated that "[u]pon payment of the Award, Franklin Bank shall restore to Financial Center Bank the Bloyer loan...." (Stipulated Facts, Ex. 2, ¶ 4.)

On May 4, 1992, after the Award was rendered but before Financial Center had complied with the terms of the Award, the Office of the Comptroller of the Currency declared Financial Center insolvent and appointed the FDIC as its receiver. The FDIC notified all creditors of Financial Center to file proofs of claim with it in order to have their claims considered. On June 23, 1992, Franklin submitted a Proof of Claim to the FDIC for the full amount of the Award. The FDIC approved this claim in a letter dated December 18, 1992, and provided Franklin with a Certificate of Proof of Claim in the amount of $441,876.87.[3] (Id., Ex. 6, Receiver's Certificate # 142.)

The FDIC made ratable distributions to Franklin of $304,934.81; $136,942.06 of the approved claim remains to be paid.

After Financial Center went into receivership, the house on the Bloyer property was substantially destroyed by fire. Franklin received and still holds $90,000 in casualty insurance proceeds. This action involves a dispute as to who has a legal right to the fire insurance proceeds.

### B.

The cross-motions for summary judgment involve the second cause of action in which Franklin seeks a declaration by the Court that it may retain the $90,000 in insurance proceeds rather than pay it to the FDIC.

Franklin moves for summary judgment on two alternative grounds: (1) that Franklin does not owe the FDIC $90,000 in casualty insurance proceeds because Financial Center's receivership estate has not paid the Award in full, which is a condition precedent to payment of the insurance proceeds; or (2) Franklin is entitled to set off the casualty insurance proceeds against the amounts still owing on its approved claim.

Franklin argues that the Award states that payment to it of the insurance proceeds is a condition precedent to the restoration of the Bloyer loan: "Upon payment of the award, Franklin Bank shall restore to Financial Center Bank the [Bloyer] loan...." (Id., Ex. 2.) Franklin argues that the condition precedent has not been met because the full amount of the Award has not been paid and, thus, the fire insurance proceeds from the Bloyer property need not be turned over to the FDIC.

The FDIC does not contest the fact that payment of the Award is a condition precedent for receipt of the fire insurance proceeds. Instead, the FDIC argues that its tender, and Franklin's acceptance of Receiver's Certificate # 142, constituted full payment and satisfaction of the Award.

The FDIC states that there is both statutory and case authority for its position.

### II.

█ As statutory authority, the FDIC relies upon the provisions of FIRREA. FIRREA established a comprehensive procedure for presentation and adjudication of nondepositor creditor claims against failed institutions. FIRREA limits recovery on an unsecured general creditor claim to a *pro rata* share of the proceeds of the liquidation of the failed institution. 12 U.S.C. § 1821(i)(2).

Specifically, the FDIC relies on § 1821(d)(10)(A), which provides:

The receiver may, in the receiver's discretion and to the extent funds are available, pay creditor claims which are allowed by the receiver, approved by the Corporation pursuant to a final determination pursuant to paragraph (7) or (8), or determined by the final judgment of any court of competent jurisdiction in such manner and amounts as are authorized under this chapter.

Under this section, Franklin is entitled only to issuance of Receiver's Certificate

---

3. In October 1992, the FDIC and Franklin agreed that the FDIC could set off $35,558.11 owing to Financial Center from Franklin, thus reducing the claim to $441,876.87.

\# 142, which it has accepted as the sole means of satisfying the Award. The Receiver's Certificate is the "manner" of payment chosen by the FDIC pursuant to § 821(d)(10)(A). Because Franklin has received a Receiver's Certificate for the whole amount of its claim, it has received "payment" and must convey the fire insurance proceeds to the FDIC.

The Southern District of New York is the only court that has considered the question whether issuance of a receiver certificate is tantamount to payment. In *Midlantic National Bank/North v. Federal Reserve Bank,* 814 F.Supp. 1195 (S.D.N.Y.1993), Judge Preska strongly supports this interpretation of the statute. There, the plaintiff obtained a money judgment against Community National Bank and served a restraining notice on the Federal Reserve for possession of held funds. Shortly after the plaintiff served the restraining notice, Community National Bank was declared insolvent, closed, and the FDIC was appointed its receiver. The plaintiff filed a proof of claim with the FDIC for the full amount of the money judgment, and the FDIC issued a receiver's certificate honoring the full amount of the money judgment, and paid plaintiff a fifty percent advance dividend.

The plaintiff then filed a petition for execution of the money judgment. The FDIC argued that the plaintiff was not entitled to the restrained funds because the administrative procedures under which plaintiff filed its proof of claim and obtained the receiver's certificate were the exclusive method by which the plaintiff could seek recovery of the money judgment. The court held that FDIC's issuance of the receiver's certificate complied with the requirement of FIRREA that the FDIC "abide by any final unappealable judgment of any court of competent jurisdiction which was rendered prior to the appointment of the [FDIC as receiver]." 12 U.S.C. § 1821(d)(13)(A). Additionally, the court declared that the money judgment was "satisfied pursuant to Fed.R.Civ.P. 60(b)(5)."[4] *Midlantic,* 814 F.Supp. at 1197.

In holding that the plaintiff was not entitled to any relief beyond what the FDIC had given it—a receiver's certificate for the full amount of the money judgment—the court stated:

> If the Court were to allow Midlantic to proceed on the money judgment at this time, Midlantic would effectively circumvent the statutory procedures established in order to allow equitable distribution of an insolvent bank's assets; the Court obviously cannot sanction such a renegade procedure.

*Id.*

Franklin's argument that the Receiver's Certificate does not constitute payment in full of the Award lacks merit. It is based on a truncated reading of the statute, which provides in part that the receiver "may, in the receiver's discretion and to the extent funds are available, pay creditor claims which are allowed by the receiver." 12 U.S.C. § 1821(d)(10)(A). According to Franklin, this language makes it clear that payment of claims means payment of "funds," not the delivery of a receiver's certificate. But, Franklin does not quote the remainder of § 1821(d)(10)(A), which provides that the receiver may pay creditor claims "*in such manner* and amounts as are authorized under this chapter." (Emphasis added.) The manner of recovery on an unsecured general creditor claim is specifically limited to a *pro rata* share of the proceeds of the liquidation of the failed institution in the form of a receiver's certificate.

Franklin further argues that the statement on the Receiver's Certificate itself belies the FDIC's argument that it is payment in full of the repurchase obligation. The Certificate states that "[It] must be surrendered to the Receiver upon payment of the final distribution." (Stipulated Facts, Ex. 6.) Franklin argues that this statement recognizes that payment is by cash distributions up to and through the payment of the final distribution, and that the statement on each of the divi-

---

4. Rule 60(b)(5) provides that the court may relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application."

dend checks refers to the amount of "remaining liability" after the payment of that particular dividend (Stipulated Facts, Exs. 7–12), and that no liability would remain if Franklin had *already* been paid in full. If the Court followed this argument, it would stand the statute on its head. The FDIC is only authorized to make dividend distributions to general unsecured creditors on a *pro rata* basis depending upon the status of the liquidation of Financial Center, the insolvent bank. Full liquidation of Financial Center may not generate proceeds sufficient to pay *pro rata* dividends equal to the face amount of the Receiver's Certificates. Thus, the statutory scheme does not mandate full payment in cash.

The language on the dividend checks referring to "remaining liability" shows the balance remaining from the original claim amount after deducting dividend distributions made.

This result is consistent with a statutory scheme stressing the exclusivity of the administrative remedy set forth in FIRREA. To hold otherwise would allow Franklin, in effect, to "jump the line" as an unsecured general creditor and, possibly, by virtue of its self help, to obtain more than a *pro rata* share of the proceeds of the liquidation of the Financial Center. Holding that the tender and acceptance of the Receiver's Certificate constitutes payment does not mean that Franklin will never see the remaining balance on its approved claim in cash, only that Franklin must take its place in line with other unsecured general creditors.

■ Nonetheless, Franklin argues that, even if the Receiver's Certificate does constitute payment in full, it is entitled to offset the fire insurance proceeds from the remaining balance on its approved claim. In the light of this Court's decision that the tender and acceptance of the Receiver's Certificate constitutes payment of the Award, Franklin is obligated under the terms of the Award to turn the fire insurance proceeds over to the FDIC as receiver. The Award states that, "[u]pon payment of the award, Franklin Bank shall restore to Financial Center Bank the [Bloyer] loan...." Accordingly, if Franklin has been paid in full, it is obligated

to turn over the fire insurance proceeds, and there would be no set-off.

Moreover, the fire on the Bloyer property occurred after Financial Center became insolvent. The Ninth Circuit has stated the basic maxim that "[t]he rights of the parties became fixed as of the date of insolvency." *First Empire Bank–New York v. FDIC*, 634 F.2d 1222, 1225 (9th Cir.1980). Thus, the fire insurance proceeds were not available to Franklin for offset at the time of Financial Center's closing, and Franklin is not entitled to retain the $90,000 in fire insurance proceeds or to offset the fire insurance proceeds against the remaining balance on its approved claim.

Accordingly,

IT IS HEREBY ORDERED that:

1. Franklin's motion for summary judgment is DENIED.

2. The FDIC's motion for summary judgment is GRANTED.

3. Franklin shall forthwith turn over the $90,000 in fire insurance proceeds to the FDIC as receiver for Financial Center.