Whitney F. SHARPE; Mona E. Sharpe,
Plaintiffs–Appellants,

v.

FDIC, Receiver for Pioneer Bank,
Defendant–Appellee.

No. 95–56291.

United States Court of Appeals,
Ninth Circuit.

Argued Dec. 13, 1996.

Submission Deferred Dec. 13, 1996.

Resubmitted Jan. 6, 1997.

Decided Sept. 19, 1997.

John T. Callan, The Buckley Firm, Mission Viejo, California, for plaintiffs-appellants.

Daniel Glenn Lonergan, Federal Deposit Insurance Corporation, Washington, D.C., for defendant-appellee.

Before FERGUSON, BEEZER and TASHIMA, Circuit Judges.

BEEZER, Circuit Judge:

Whitney and Mona Sharpe ("the Sharpes") appeal the district court's dismissal of their action for declaratory, injunctive and monetary relief against the Federal Deposit Insurance Corporation ("FDIC"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

## I

During early July 1994, a rather routine real estate foreclosure action, involving incidental real property legal description and recordation issues, was pending in the Superior Court of California for the County of Orange under cause No. 71–39–42. The parties to that action were: Whitney and Mona Sharpe; Pioneer Bank, a California corporation ("Pioneer" or "the Bank"); and DEV IX/Tustin Freeway Center Associates, a California Limited Partnership whose general partner was Cody M. Small ("the Debtor").

The parties to the state court action resolved to settle their differences amicably and entered into a written settlement agreement dated and signed by the Sharpes and the Bank on July 7, 1994. The agreement reflects the debtor-creditor status of the parties to the state court action as follows:

(a) Sharpes' loan to Debtor:

On April 4, 1990, the Debtors executed in writing and delivered to the Sharpes a Purchase Money Promissory Note ("the Note") dated April 4, 1990, secured by a Deed of Trust in favor of the Sharpes, whereby Debtors agreed to pay the Sharpes the principal sum of $542,500 together with additional payments, in the manner specified in the Note.

To secure performance of all obligations of Debtors to the Sharpes, Debtors gave the Sharpes, as beneficiary, a Purchase Money Deed of Trust dated April 4, 1990, and recorded in the official Records of Orange County, California on August 15, 1990 as Instrument No. 90–432965 (the "Sharpe Deed of Trust").

(b) Bank's loan to Debtor:

On August 9, 1990, the debtors gave the Bank a Construction Loan promissory note (the "Bank Note") wherein debtors promised, among other things, to pay to the Bank the principal amount of $4,375,000 together with the interest thereon, in the manner specified in the Bank Note.

To secure performance of all obligations of Debtors to the Bank, including the Bank Note, Debtors gave the Bank, as beneficiary, a Construction Deed of Trust, Assignment of Leases, Security Agreement and Fixture Filing dated August 9, 1990, and recorded in the official Records of Orange County, California on August 15, 1990 as Instrument No. 90–432970 (the "Bank Trust Deed").

The principal terms of the settlement required the bank to pay the Sharpes the sum of *"$510,000 by wire transfer to the trust account [of an attorney] no later than 12:00 noon on July 8, 1994."* (emphasis added). The Sharpes were required to deliver to the Bank the Debtor's note and deed of trust together with the Sharpes' request for reconveyance of the deed of trust. The agreement contemplated a simultaneous exchange of funds for documents. The agreement contained additional provisions involving title matters, release of parties, settlement and dismissal of the pending state court litigation and an attorney's fee provision if enforcement of the agreement required further action.

On July 8, 1994, the Sharpes executed the settlement agreement and delivered the required note, deed of trust and reconveyance documents to Pioneer. In exchange, Pioneer delivered the executed counterpart of the

settlement agreement and, contrary ·to the express terms of the settlement agreement, two Pioneer cashier's checks for the total sum of $510,000.

State regulators seized Pioneer Bank after the close of business on July 8, and the FDIC was appointed receiver for Pioneer. The FDIC took possession of the documents delivered by the Sharpes to Pioneer.

On July 11, 1994, the FDIC, as receiver of Pioneer, notified counsel for the Sharpes that the Pioneer cashier's checks would not be honored. The FDIC furnished the Sharpes a proof of claim form which the Sharpes executed and returned to the FDIC.

On August 1, 1994, the Sharpes filed suit against the FDIC in the United States District Court, seeking to enjoin the FDIC from recording the reconveyance and requesting enforcement or rescission of the settlement agreement. On August 7, 1994, the parties appeared in district court to consider a stay of the proceedings. The court urged the parties to agree to a stay. The FDIC recorded the reconveyance of the Sharpes' deed of trust in the Recorder's Office of Orange County, California, on August 15, 1994. On September 15, 1994, the court approved a stipulation of the parties which contained the following provisions:

> It is hereby stipulated by and among the parties, Whitney and Mona Sharpe (the "Sharpes") and the Federal Deposit Insurance Corporation, receiver for Pioneer Bank ("FDIC"), through their respective counsel, that the litigation in the above-entitled action before the Honorable Linda H. McLaughlin shall be stayed pending the conclusion of the FDIC administrative claims process.

> The parties further agree that the submittal of a Proof of Claim form in the amount of $510,000.00 on behalf of the Sharpes shall not constitute a waiver of any of the Sharpes' claims to enforce or rescind the Settlement Agreement and Mutual Release which is the subject of this action. · The parties agree that this action shall become moot if Sharpes' claim is paid in full through the receivership claims process and that a dismissal will be filed by the Sharpes within fifteen (15) days of receipt of full cash payment.

Finally, the parties agree that the FDIC's tender to the Sharpes' [sic] of a Receiver's Certificate on their Proof of Claim, and the Sharpes' retention of same, shall not constitute Sharpes' acceptance of the certificate as payment of the Settlement Agreement and Mutual Release nor of satisfaction of the Sharpe Note and Deed of Trust. Instead, the parties agree that this issue shall be preserved for future litigation, in the event the FDIC tenders a Receiver's Certificate on the Sharpes' claim.

The FDIC considered the Sharpes' claim in an administrative proceeding. The FDIC "allowed" the claim and on September 27, 1994, tendered to the Sharpes $100,000 in cash and a receiver's certificate for $380,000. The Sharpes have since also received a 50 percent advance dividend on the receiver's certificate.

On June 30, 1995, the district court lifted the stay. The Sharpes moved for summary judgment, and the FDIC moved to dismiss and, in the alternative, for summary judgment. The district court denied the summary judgment motions and dismissed the action for lack of jurisdiction. The district court held that the Financial Institutions Reform, Recovery and Enforcement Act of 1989, P.L. 101–73, 103 Stat. 183, 12 U.S.C. § 1811 et seq., ("FIRREA"), provides no basis for judicial review of claims "allowed" by the FDIC, citing 12 U.S.C. §§ 1821(j), 1821(d)(10)(4) and 1821(d)(13)(D). The court held that the Sharpes were effectively depositors, and therefore creditors, of Pioneer because 12 U.S.C. § 1813(*l*)(4) defines a "deposit" as any outstanding draft, including a cashier's check. As such, the court found that the Sharpes were subject to the exhaustion requirement. The court further held that the bank complied with the settlement agreement by payment with a cashier's check.

## II

We review de novo the dismissal of a complaint for lack of subject matter ·jurisdiction. *Sahni v. American Diversified Partners,* 83 F.3d 1054, 1057 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 765, 136

L.Ed.2d 712 (1997). We also review de novo the Sharpes' administrative claim against the FDIC. 12 U.S.C. §.1821(d)(5)(E).[1]

Resolution of this appeal involves a determination of (1) the nature of the Sharpes' state law cause of action; (2) whether 12 U.S.C. § 1821(j) bars the Sharpes' claims; and (3) whether the Sharpes' complaint pleads a "claim" for the purposes of FIRREA. "Claims" under the statute are subject to an administrative exhaustion requirement. Throughout our opinion we will refer either to the Sharpes' cause of action, which is comprised of their state law claims, or to their administrative claim, which is comprised of the issues that must be initially resolved by the FDIC's claims process.

The Sharpes assert that the district court failed to accept the breach of contract nature of their cause of action and improperly applied FIRREA requirements as if the Sharpes were creditors of Pioneer. The FDIC seeks affirmance of the district court's dismissal on jurisdictional grounds, arguing that the Sharpes were creditors of Pioneer because they held Pioneer cashier's checks and that 12 U.S.C. § 1821(j) deprives the district court of jurisdiction over claims for equitable relief.

First we discuss the nature of the Sharpes' cause of action against the FDIC and then whether the Sharpes have stated a claim which requires pursuit of the administrative claims process under FIRREA.

### III

■ At the outset, we note that as receiver the FDIC "steps into the shoes" of the failed financial institution, assuming all the rights and obligations of the defunct bank. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86–87, 114 S.Ct. 2048, 2054–55, 129 L.Ed.2d 67 (1994); *see also United States v. Winstar Corp.*, —— U.S. ——, ————, 116 S.Ct. 2432, 2464–65, 135 L.Ed.2d 964 (1996), (citing *Lynch v. United States*, 292 U.S. 571, 579, 54 S.Ct. 840, 843, 78 L.Ed. 1434 (1934) (stating the general principle that when the government enters into contracts, " 'its rights and duties therein are governed generally by the law applicable to contracts between private individuals.' ")). We will therefore consider the actions of Pioneer Bank to be those of the FDIC.

The facts of this case are undisputed by the parties. Pursuant to the settlement agreement, the Sharpes delivered a reconveyance of the debtor's deed of trust and the debtor's promissory note to Pioneer Bank. Pioneer Bank was under a contractual obligation to pay the Sharpes $510,000 with a wire transfer of funds. Contrary to the terms of the settlement agreement, the bank tendered payment in the form of two cashier's checks, which the FDIC subsequently refused to honor.

■ We observe that the law governing the relationship between depositors and banks does not apply to the Sharpes' cause of action. "Whether any particular transaction constitutes a deposit in the accepted sense of the term will depend on the intent of the parties as ascertained from the facts and circumstances disclosed." *Estate of Collins*, 84 Cal.App.3d 928, 933, 149 Cal.Rptr. 65 (1978). A cashier's check ordinarily may be considered a deposit to the credit of the check holder, *see* Michie, *Banks and Banking*, Ch. 9, § 251 (1991), but none of the circumstances of this case indicates an intent on the part of the parties that the Sharpes would become depositors of Pioneer Bank or the FDIC. Under California law, a " 'depositor' is one who pays money into a bank in the usual course of business, to be placed to his credit." *In re Collins*, 84 Cal.App.3d at 933, 149 Cal.Rptr. 65. The Sharpes never paid money to Pioneer Bank, nor did they ever intend to maintain credit there. Moreover, their possession of the cashier's check did not occur "in the usual course of business."

■ Even if the Sharpes were considered depositors under state law, their relationship with the bank, and subsequently the FDIC, is governed by the terms of the settlement agreement rather than by any boilerplate or default provisions regarding depositors. The relationship between a bank and a depositor is a contractual one and may be

---

1. Pursuant to FIRREA, only if a claimant requests administrative review of a claim determined by the FDIC does the court apply the standard of the Administrative Procedures Act. 12 U.S.C. 1821(d)(7)(A).

altered by the parties. *Id.; see also* 9 C.J.S. Banks and Banking § 271 (1996). As such, the settlement agreement governs, and the Sharpes are neither creditors nor depositors under the agreement. They are parties to a contract they fully performed.

■■■ We now apply ordinary principles of contract interpretation in examining the rights between the parties. The FDIC failed to perform its obligations under the contract. It is beyond cavil that this failure to perform the express terms of the settlement agreement is a breach. 1 Witkin, *Summary of California Law, Contracts* § 791 (9th ed. 1987) ("The *wrongful,* i.e., the unjustified or unexcused, failure to perform a contract is a breach."); *see also Nicholson v. Barab,* 233 Cal.App.3d 1671, 1681, 285 Cal.Rptr. 441 (1991) (settlement agreements interpreted according to contract principles under California law); *Far West Federal Bank v. Office of Thrift Supervision,* 119 F.3d 1358, 1365 (9th Cir.1997) (holding the FDIC liable for rescission and restitution where the enactment of FIRREA resulted in the repudiation of a contract entered into between a group of investors and the FDIC).

■■■ Payment by cashier's check is not equivalent to a wire transfer and, as such, constitutes a breach of the settlement agreement. A wire transfer accomplishes the transfer of funds through a chain of contractual obligations, and the drawer's creditworthiness is tested at the beginning of the transaction. With a check, the drawer's creditworthiness is not tested until presentment. Clark & Clark, *The Law of Bank Deposits, Collections and Credit Cards* ¶ 17.02. With a wire transfer, the funds are available immediately; a cashier's check, on the other hand, is a negotiable instrument that is only an order to pay. We hold that the bank's tender by cashier's check and the FDIC's subsequent refusal to honor the checks constitute material breaches of the settlement agreement. Had the FDIC honored the cashier's checks, the Sharpes would

have suffered no damages as a result of the breach; the failure to honor the checks gives rise to a cause of action for breach of contract with a remedy.

■■■ Absent any contrary provisions of FIRREA, the Sharpes are entitled to enforce the obligation imposed upon the FDIC by the failed bank's issuance of the cashier's checks. Payment by check is conditional, and payment is defeated by dishonor of the check. 3 Witkin, *Summary of California Law, Sales* § 149 (9th ed.1987). Under the California Commercial Code, the holder in due course of an instrument has a right to enforce the instrument subject only to the exceptions in § 3305 of the California Commercial Code, none of which applies here.[2] The Sharpes are holders in due course of the cashier's checks because they "took the instrument for value, in good faith and without notice that it had been dishonored or of any defense against it." *Tokai Bank of California v. First Pacific Bank,* 186 Cal.App.3d 1664, 1668, 231 Cal.Rptr. 503 (1986).

■■■ In their complaint, the Sharpes seek declaratory relief as well as, alternatively, rescission or damages. Under California law, aggrieved parties are not, of course, entitled to an award of alternative remedies. But only if the plaintiffs' actions cause substantial prejudice to the defendant are the plaintiffs required to make a binding election of remedies prior to judgment. *General Ins. Co. of America v. Mammoth Vista Owners' Assoc., Inc.,* 174 Cal.App.3d 810, 828, 220 Cal.Rptr. 291 (1985); *Wallis v. Superior Court,* 160 Cal.App.3d 1109, 1114–15, 207 Cal. Rptr. 123 (1984).

In this case, only the Sharpes have been prejudiced by the FDIC's actions. From the outset, the Sharpes sought a rescission remedy, but, by recording the reconveyance executed and delivered by the Sharpes, the FDIC prejudiced the Sharpes' ability to rescind the settlement agreement. The FDIC

---

**2.** Section 3305 of the California Commercial Code provides in part: "[T]he right to enforce the obligation of a party to pay an instrument is subject to all of the following: (1) A defense of the obligor based on (A) infancy of the obligor to the extent it is a defense to a simple contract, (B) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (C) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (D) discharge of the obligor in insolvency proceedings."

also forced the Sharpes into the administrative claims process through which the Sharpes have received what might be construed as a partial damages award.

 In short, the FDIC's actions may have limited the remedies now available to the Sharpes. Because the record fails to disclose the condition of title to the property that was the subject of the settlement agreement, we do not know whether rescission remains an available and effective remedy. Nor do we have current information regarding payments from the FDIC to the Sharpes. Moreover, the settlement agreement provides, in paragraph 17, that "[i]n any action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover attorney's fees, expert's fees, and costs in connection with such action." Based on our consideration of the record, we are unable to determine the attorney's fees and costs due the Sharpes.[3]

## IV

 Notwithstanding the Sharpes' valid state law cause of action, the FDIC asserts that FIRREA interposes to bar the Sharpes' recovery under state law.[4] Congress passed FIRREA in 1989 in response to the crisis in the nation's banking and savings and loan industries. The statute allows the FDIC to act as receiver or conservator of a failed institution for the protection of depositors and creditors. *Telematics Int'l v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992). Congress granted the FDIC broad powers in conserving and disposing of the assets of the failed institution. "To enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a broad limit on the power of courts to

interfere with the FDIC's efforts." *Id.* This power, however, is not unlimited. Because we have already determined that the Sharpes have a cause of action for breach of contract, we next address whether FIRREA imposes any limitation on their state law right to pursue the action.

### A

 The FDIC first contends that 12 U.S.C. § 1821(j) deprives the court of jurisdiction over the Sharpes' claim. Section 1821(j), an anti-injunction section, provides that:

> Except as otherwise provided in this section, no court may take any action except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

We have held that this section "bars restraint by the courts on the statutory powers of the FDIC when it acts as receiver." *Sahni v. American Diversified Partners*, 83 F.3d at 1058. There are few exceptions to this jurisdictional bar. Indeed, "the fact that the RTC's actions might violate some other provision of law does not render the anti-injunction provision inapplicable." *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994), *cert. denied*, 515 U.S. 1162, 115 S.Ct. 2618, 132 L.Ed.2d 860 (1995) (and see cases cited therein). Section 1821(j) prevents courts from granting any equitable relief against the FDIC, and the FDIC argues that it operates here to bar the Sharpes' equitable claims. The Sharpes' claims for injunctive relief are moot, however. Their complaint sought to enjoin the FDIC from recording the instruments delivered by the Sharpes, but the FDIC recorded the reconveyance of

---

3. The Sharpes are not, however, entitled to an award of prejudgment interest. The limited sovereign immunity of the FDIC bars this form of relief. *Far West Federal Bank, S.B., et al. v. Office of Thrift Supervision, et al.*, 119 F.3d 1358, 1366.

4. To the extent that the FDIC contends that the district court should not hear the Sharpes' cause of action, their arguments fall flat. Although parties may not waive the subject matter jurisdiction requirement, the stipulation agreed upon by the FDIC and the Sharpes indicates that the

district court had the authority to entertain the Sharpes' cause of action as long as subject matter jurisdiction exists. The stipulation provides: "the parties further agree that the submittal of a Proof of Claim form .... on behalf of the Sharpes shall not constitute waiver of any of the Sharpes' claims to enforce or rescind the Settlement Agreement.... Finally, the parties agree that the FDIC's tender to the Sharpes' [sic] of a Receiver's Certificate on their proof of claim, and the Sharpes' retention of same, shall not constitute Sharpes's acceptance of the certificate as payment ..."

the deed of trust on August 15, 1994. Thus only the requests for declaratory relief, rescission and damages remain.

 The damages claim is not affected by the jurisdictional bar imposed by § 1821(j), but the claims for rescission and declaratory relief must fall under an exception to § 1821(j) in order to survive. The bar imposed by § 1821(j) does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as a receiver. Section § 1821(j) "shields only 'the exercise of powers or functions' Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions." *National Trust for Historic Preservation v. FDIC*, 995 F.2d 238, 240 (D.C.Cir.1993), *judgment vacated*, 5 F.3d 567 (D.C.Cir.1993), *and reinstated in relevant part*, 21 F.3d 469 (D.C.Cir.1994).

 FIRREA does not authorize the breach of contracts, nor does it require the FDIC to record all instruments of conveyance in its possession at the time it is appointed receiver. FIRREA also does not preempt state law so as to abrogate state law contract rights. *See infra* section IV–B. Indeed, § 1821(d)(2)(H) requires that the FDIC "pay all valid obligations of the insured depository institution."

Although the statute clearly contemplates that the FDIC can escape the obligations of contracts, it may do so only through the prescribed mechanism. Section 1821(e) allows the FDIC to disaffirm or repudiate any contract it deems burdensome and pay only compensatory damages. FIRREA does not permit the FDIC to breach contracts at will. We hold that the FDIC did not act within its statutorily granted powers in breaching the Sharpes' settlement agreement because recording of the reconveyance of the debtor's deed of trust for which it did not pay full consideration cannot be considered a statutorily authorized function of the FDIC. The Sharpes' claims for declaratory relief and rescission therefore are not barred by § 1821(j).

**5.** Federal courts do have jurisdiction to stay an action against the FDIC pending exhaustion of the administrative claims process when the suit

**B**

 The FDIC next argues that the Sharpes' cause of action constitutes an administrative claim subject to the exhaustion requirement. After the FDIC was appointed receiver for Pioneer Bank, the Sharpes filed this action in district court. Rather than dismissing the complaint, the district court stayed the proceedings pending the resolution of the FIRREA claims process. If exhaustion of administrative remedies was required, the court did not have jurisdiction to enter the stay. 12 U.S.C. § 1821(d)(13)(D); *Intercontinental Travel Marketing, Inc. v. Federal Deposit Insurance Corp.*, 45 F.3d 1278, 1282 (9th Cir.1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process."); *Resolution Trust Corp. v. Titan Financial Corp.*, 22 F.3d 923, 926 (9th Cir.1994); *Meliezer v. Resolution Trust Corp.*, 952 F.2d 879, 881 (5th Cir.1992); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391–92 (3d Cir.1991), *cert. denied*, 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).[5] If the district court did not have jurisdiction, we would dismiss the Sharpes' action against the FDIC for lack of jurisdiction at the outset; if, on the other hand, exhaustion was not required, jurisdiction was proper and we can review the district court's judgment of dismissal.

Many actions against the FDIC are subject to an exhaustion requirement before federal court jurisdiction may attach. FIRREA strictly circumscribes the power of federal courts to interfere with the resolution of administrative claims by the receivers of failed financial institutions. Section 1821(d)(13)(D) of FIRREA contains broad language limiting the scope of judicial review. The section states, in relevant part:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver . . . or

was filed *prior* to the appointment of the receiver. *Intercontinental Travel Marketing, Inc. v. FDIC*, 45 F.3d at 1284 (and see cases cited therein).

(ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

The "except as otherwise provided" language refers to the provision that allows courts jurisdiction after the administrative claims process has been completed.

 Despite this broad language, the limitation on judicial intervention is not absolute. Not all claims are subject to the exhaustion requirement of FIRREA. We have held, for example, that affirmative defenses in response to RTC or FDIC claims are not subject to the administrative exhaustion requirement. *Resolution Trust Corp. v. Midwest Fed. Sav. Bank*, 36 F.3d 785, 793 (9th Cir.1993). Claims arising from management actions by the RTC have likewise been held not to be subject to FIRREA. *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1274 (10th Cir.1994); *see also National Union Fire Insurance Co. v. Midland Bancor, Inc.*, 869 F.Supp. 880 (D.Kan. 1994).

We conclude here that the Sharpes were not required to submit their cause of action to the FDIC administrative process because they are not creditors of the FDIC. Congress enacted FIRREA in response to the savings and loan crisis in an effort to resolve expeditiously creditor and related claims. *See Homeland Stores*, 17 F.3d at 1274. The statute is directed at protecting insured deposits and the rights of creditors of financial institutions. Nothing in the statute addresses whether a cause of action by a party to a contract breached by the FDIC is considered a "claim" for the purposes of the administrative exhaustion requirement.

Section 1821(d) sets forth an administrative claims process, which requires that creditors submit "claims" to the FDIC for administrative resolution.[6] If the Sharpes are considered creditors, they are subject to that claims process.

The FDIC contends that the Sharpes' acceptance of the cashier's checks makes them depositors, and therefore creditors, of the FDIC and as such subject to the FIRREA exhaustion requirement. *See* 12 U.S.C. § 1813(*l*)(4). Section 1813(*l*)(4) defines an outstanding cashier's check as a deposit. The FDIC argues that this provision transforms the Sharpes into creditors of the FDIC. We are unpersuaded. Just as the Sharpes are not depositors under California law, *see supra* Part III, they are not creditors under FIRREA. Although the Sharpes are in possession of cashier's checks drawn on the failed financial institution, we cannot accept the argument that this makes them creditors for the purposes of FIRREA.

But for the FDIC's breach, the full cash amount specified in the settlement agreement would have been wired to the Sharpes. It is only as a consequence of the FDIC's breach that the FDIC can construe the Sharpes as creditors of the FDIC. Were we to endorse the FDIC's assertion that the Sharpes are creditors for the purposes of FIRREA, the FDIC would be free to breach any pre-receivership contract, keep the benefit of the bargain, and then escape the consequences by hiding behind the FIRREA claims process.

Further, to allow the FDIC to avoid its contractual obligations by invoking the FIRREA administrative claims process would effectively preempt state contract law. The statute does not indicate that Congress intended to preempt state law so broadly. *See O'Melveny & Myers v. FDIC*, 512 U.S. at 87, 114 S.Ct. at 2054 ("It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims *under state law*, except where some provision in the extensive framework of FIRREA provides otherwise.") (emphasis added). The District of Columbia Circuit recently held that FIRREA does not preempt state contract law, both because the language of the statute does not indicate that Congress intended to preempt such a broad area of state law and because of the potential constitutional problems with so holding. *Waterview Management Co. v. FDIC*, 105

---

6. "The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—(i) promptly publish a notice to the depository institution's *creditors* to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice...." 12 U.S.C. § 1821(d)(3)(B) (emphasis added).

F.3d 696, 699 (D.C.Cir.1997) ("Indeed, to hold that the federal government could simply vitiate the terms of existing assets, taking rights of value from private owners with no compensation in return, would raise serious constitutional issues."). We adopt the reasoning of that court.

A recent Supreme Court decision supports our conclusion that aggrieved parties to a contract breached by the FDIC are not subject to the FIRREA claims process. In *United States v. Winstar,* —— U.S. ——, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), several financial institutions sued the government, alleging that the enforcement of FIRREA resulted in the breach of contracts they had with the government regarding the accounting methods used in the acquisition of failing banks. The Supreme Court, in holding that the government remained contractually obligated to the parties notwithstanding FIRREA's enactment, never indicated that the cause of action was subject to FIRREA's administrative procedures. Likewise, the Sharpes' cause of action for breach of contract is not a "claim" subject to the administrative exhaustion requirement.

Our conclusion is further supported by FIRREA's provision regarding the repudiation of contracts. 12 U.S.C. § 1821(e). Section 1821(e) allows the FDIC to "disaffirm" any contract that it determines to be burdensome. When the FDIC chooses to repudiate a contract pursuant to § 1821(e), it must inform the parties to the contract within a reasonable time and pay compensatory damages.

Had the FDIC followed the § 1821(e) procedure in disaffirming the settlement agreement with the Sharpes, this would have been a very different case. But rather than proceeding pursuant to § 1821(e), the FDIC chose to breach the contract by recording the reconveyance delivered by the Sharpes without making a wire transfer of funds which was its obligation under the settlement agreement. FIRREA does not address the consequences of the FDIC's breach of the Sharpes' settlement agreement, but it cannot

be the case that the FDIC is in a better position when it breaches a contract than when it chooses to repudiate pursuant to § 1821(e).[7]

The Sharpes are a party to a pre-receivership contract breached by the FDIC, and they retain the rights accompanying that contract notwithstanding the appointment of the FDIC as receiver. The Sharpes cannot be considered creditors of the FDIC, and we hold that their claim is not a "claim" for the purposes of the FIRREA exhaustion requirement.

## V

We conclude that the district court had jurisdiction at the time the Sharpes filed this action because the Sharpes' claim did not require administrative exhaustion. The Sharpes did, however, submit their claims to the FDIC's administrative process and thus far have received payment of $290,000. We conclude that the FDIC breached the state court approved settlement agreement with the Sharpes. We reverse the district court's judgment of dismissal and remand for a determination of the remedy available to the Sharpes based upon the breach of the settlement agreement by the FDIC and for a determination of fees and costs to be awarded.

REVERSED and REMANDED.

---

7. Because the FDIC did not repudiate the agreement pursuant to § 1821(e), we need not decide here whether claims against the FDIC regarding contract repudiation under § 1821(e) are subject to the exhaustion requirement. *Cf. Simon v. FDIC,* 48 F.3d 53, 57–58 (1st Cir.1995); *Homeland Stores,* 17 F.3d at 1275.