**Ralph E. McCARTHY, Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Superior Bank F.S.B. and Conservator of Superior Bank F.S.B. (New Superior); Alliance Funding, a Division of Superior Bank F.S.B.; Superior Bank F.S.B.; Superior Bank F.S.B. (New Superior); Charter One F.S.B.; Missouri Capital Mortgage; Springfield Title Company; Springfield Closing Company; James Fossard, Trustee, Defendants–Appellees.**

No. 02–56357.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed Nov. 5, 2003.

Ralph E. McCarthy, Pro se, Channel Islands, CA, for the plaintiff-appellant.

J. Scott Watson, Federal Deposit Insurance Corporation, Washington, DC, for the defendants-appellees.

Before WALLACE, RYMER, and TALLMAN, Circuit Judges.

## OPINION

RYMER, Circuit Judge.

Ralph E. McCarthy appeals the dismissal of his action for damages for the way the Federal Deposit Insurance Corporation (FDIC) handled a loan that he was negotiating with Superior Bank, F.S.B. after the bank failed and the FDIC was appointed as receiver. The district court held that it lacked subject matter jurisdiction because McCarthy failed to exhaust his claims pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(d)(13)(D). McCarthy argues that he was not required to exhaust because he was a debtor, not a creditor, of the bank, and because his claims arise out of post-receivership conduct of the FDIC. We agree with the district court that FIRREA's exhaustion requirement applies to bank debtors as well as creditors, and to claims that arise out of acts by the receiver as well as by the failed institution. Accordingly, we affirm.

## I

On July 27, 2001, the Office of Thrift Supervision (OTS) closed Superior Bank for insolvency, under-capitalization, and predatory loan practices. The FDIC, in its capacity as receiver, took possession and control of Superior's assets. On July 30, the OTS chartered a new institution, Superior Federal Savings Bank, F.S.B. (New Superior), and appointed the FDIC as its conservator. The FDIC transferred the assets of Superior to New Superior. According to McCarthy's complaint, the FDIC permitted Alliance Funding, a division of Superior, to continue servicing, soliciting and placing loans without disclosing that it was under receivership.

On August 1, Missouri Capital Mortgage, acting on McCarthy's behalf, obtained a pre-approved loan commitment from Alliance in the amount of $117,400 secured by ten (out of thirty-five) acres of land owned by McCarthy with an appraised value of $138,000. McCarthy's full thirty-five acres were then reappraised at $177,000. On August 15, Alliance structured a new loan, this time with a principal amount of $138,000 secured by all thirty-five acres at a higher rate of interest.

McCarthy filed suit in federal district court alleging that he was coerced into accepting the new loan because it was offered on a "take-it-or-leave-it" basis and that he would not have executed this loan had he known of Superior's closure and the FDIC's receivership. His complaint seeks a declaration that the FDIC, Superior and Alliance violated their fiduciary duties and damaged McCarthy in the amount of $50,400, that this sum should be offset against his loan with Superior, and that his interest rate should be modified.[1]

The FDIC moved to dismiss under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. McCarthy opposed on the ground that claims by *debtors* of a failed institution fall outside the claims process that FIRREA establishes for *creditors*, as do post-receivership acts of the receiver. The district court granted the FDIC's motion, and this appeal followed.

## II

McCarthy argues that FIRREA does not apply to a debtor's action against the FDIC and that we have already said so in *Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir. 1997), and *In re Parker North American Corp.*, 24 F.3d 1145 (9th Cir.1994). However, as we shall explain, these cases arose in different contexts and are not controlling. The text of § 1821(d)(13)(D) plainly states that *any* claim or action that asserts a right to assets of a failed institution is subject to exhaustion. There is no limitation to creditors, or exclusion of debtors, and that *is* controlling.

FIRREA constrains judicial review as follows:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

---

1. Other named defendants on the federal claim are Charter One, F.S.B., to whom New Superior's assets were transferred by the FDIC on November 19, 2001, and James Fossard, trustee on a trust deed given to Superior.

12 U.S.C. § 1821(d)(13)(D). The phrase "except as otherwise provided in this subsection" refers to a provision that allows jurisdiction after the administrative claims process has been completed. *Sharpe*, 126 F.3d at 1156; *see* 12 U.S.C. § 1821(d)(6)(a).

*Sharpe* was an unusual case. Depositors of Pioneer Bank had entered into a settlement agreement with the bank that provided for a wire transfer of funds. The bank delivered cashier's checks instead. Immediately afterwards the bank failed and the FDIC, which stepped into its shoes, failed to honor the cashier's checks. It did not, however, repudiate the obligation. The Sharpes sued for breach of the settlement contract, which the FDIC maintained was an administrative claim subject to FIRREA's exhaustion requirements. We held otherwise, observing that the Sharpes were neither creditors nor debtors, but parties to a contract they fully performed. We remarked that they were not required to submit their cause of action to the FDIC because they were not creditors, and "[n]othing in the statute addresses whether a cause of action by a party to a contract breached by the FDIC is considered a 'claim' for the purposes of the administrative exhaustion requirement." 126 F.3d at 1156. Accordingly, we reasoned, if merely breaching a contract were to make the Sharpes creditors subject to the claims process, the FDIC "would be free to breach any pre-receivership contract, keep the benefit of the bargain, and then escape the consequences by hiding behind the FIRREA claims process." *Id.* at 1156, 1157 (citing 12 U.S.C. § 1821(e)). Recognizing that this would have been a very different case had the FDIC followed the § 1821(e) procedure in disaffirming the settlement agreement, we concluded that a cause of action for breach of contract is not a "claim" subject to the FIRREA claims process. Thus, we had no occasion to decide whether a debtor's claim or action, like a creditor's, must be exhausted, for the Sharpes were not debtors and our decision turned on the claimants' being aggrieved parties to a contract that the FDIC had not repudiated.

*Parker* arose in the special context of bankruptcy. It involved an adversary proceeding by a debtor in bankruptcy against Sooner Federal Savings and Loan Association to recover a partial payment on a sale and leaseback agreement that Parker claimed was a preferential transfer. After Sooner filed proofs of claim against Parker for the balance of the loan, OTS declared the institution insolvent and appointed the Resolution Trust Corporation (RTC) as receiver pursuant to FIRREA. The question was whether the bankruptcy court had jurisdiction over the preference action against an institution for which the RTC had filed a proof of claim that exceeded the amount sought to be recovered by the debtor. We held that it did, explaining that the preference action incident to the RTC's collection efforts was not susceptible of resolution through FIRREA's claims procedure because it was not a claim by a creditor against the RTC; that Congress intended FIRREA to dispose of claims against failed financial institutions; and that bankruptcy courts have expertise to determine preference actions but the RTC does not. In this way we sought to harmonize the Bankruptcy Code and FIRREA so as to allow bankruptcy courts to determine matters in which they, not the RTC, have specific competence. But, as other courts have noted, *Parker* lacks force outside the bankruptcy context with which it was concerned. *See Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 714 n. 11 (8th Cir.1996); *Freeman v. FDIC*, 56 F.3d 1394, 1401–02 (D.C.Cir.1995). For reasons explained by Judge Wald in *Freeman*, we also decline to extend *Parker* beyond bankruptcy:

The concern underlying these cases [such as *Parker*] is clear: if bankruptcy courts are ousted of jurisdiction over a broad class of claims under the § 1821(d) jurisdictional bar, the unity of the bankruptcy process may be fractured and some bankruptcy-related claims would be determined, at least in the first instance, by FDIC administrative tribunals, which (it is argued) have little expertise in bankruptcy matters. For the reasons stated above, we do not think this construction of the § 1821(d)(13)(D) jurisdictional bar quite squares with the statutory text. But even if § 1821(d)(13)(D) is narrowly construed as a limitation on bankruptcy courts' jurisdiction in order to effectuate the purpose of the Bankruptcy Code, we decline to extend that approach to non-bankruptcy court contexts. To do so would not advance the purposes of the Bankruptcy Code, while it would undercut Congress' core purposes in enacting FIRREA, which was to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks.

We therefore hold that the § 1821(d) jurisdictional bar is not limited to claims by "creditors," but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver, including debtors' claims.

*Id.* at 1401–02 (internal quotations and citations omitted).

Apart from claims made in the context of a bankruptcy proceeding or arising out of a breach of contract in the circumstances present in *Sharpe*, we have held that a claimant must complete the claims process before seeking judicial review. *Henderson v. Bank of New Eng.*, 986 F.2d 319, 321 (9th Cir.1993). In *Henderson*, we considered whether the FIRREA claims process applies to a cause of action by an applicant for a credit card against the FDIC as receiver of the bank that denied his application. Concluding that it did, we drew no distinction between creditors and debtors; rather, we held, "[t]he statute bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is 'susceptible of resolution through the claims procedure.'" *Id.* (quoting *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 394 (3d Cir.1991)).

■ Thus we see no reason why the plain meaning of the statute should not govern this case. McCarthy seeks the recovery of $50,400 for breach of fiduciary duty. Even though he asks that the payment be awarded by way of "offset" against the balance due on his loan from Superior, it is a payment nonetheless. The payment would diminish Superior's assets, as would lowering the interest rate and restricting remedial options that are available to the receiver. There is no reason why McCarthy's claims may not be processed administratively as effectively as Henderson's were. And, regardless of whether he is a creditor or a debtor making claim to the bank's assets, requiring exhaustion furthers the purpose of FIRREA "to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution" and promptly to "wind up the affairs of failed banks." *Freeman*, 56 F.3d at 1401 (citations omitted).

Other circuits have uniformly held that debtors' actions are subject to FIRREA exhaustion. *See Lloyd v. FDIC*, 22 F.3d 335, 337 (1st Cir.1994) (holding that a suit by debtor seeking equitable reformation or cancellation of mortgage agreement is a "determination of rights with respect to [ ] the assets" subject to § 1821(d)(13)(D) (al-

teration in original)); *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 389 (3rd Cir.1994) (holding that the bar against "any action" in § 1821(d)(13)(D) "includes actions by debtors as well as creditors"); *Meliezer v. Resolution Trust Corp.*, 952 F.2d 879, 883 (5th Cir.1992) (holding that a mortgagor's claim that failed institution was negligent in allowing mortgagor to assume insufficient insurance is subject to exhaustion); *Tri–State Hotels, Inc.*, 79 F.3d at 714–15 ("The great weight of authority holds that FIRREA requires debtors as well as creditors to undergo the administrative review process."); *Stamm v. Paul*, 121 F.3d 635, 640–42 (11th Cir.1997) (holding district court lacked jurisdiction to consider debtors' countersuit against a foreclosing receiver because debtors' claims had not been administratively exhausted); *Freeman*, 56 F.3d at 1400–02 (holding that § 1821(d) is not limited to creditors' claims but extends to debtors' claims); *see also Marquis v. FDIC*, 965 F.2d 1148, 1151–52 (1st Cir. 1992) (holding that § 1821(d) renders exhaustion mandatory for all claims seeking payment from assets of the affected institution). We join them by making clear that the exhaustion rule we recognized in *Henderson* is not limited to creditors, but applies as well to debtors with claims such as McCarthy's that affect the assets of a failed institution.

## III

█ McCarthy contends that even if debtors in general are required to exhaust, he does not need to exhaust his claims because they stem from conduct by the FDIC after its appointment as receiver.

Most circuit courts to consider this issue have determined that post-appointment claims against the FDIC are subject to FIRREA exhaustion. *See Heno v. FDIC*, 20 F.3d 1204, 1208–10 (1st Cir.1994) (*Heno II*);[2] *Rosa*, 938 F.2d at 392; *FDIC v. Scott*, 125 F.3d 254, 259 (5th Cir.1997); *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 763–64 (5th Cir.1996) (per curiam); *Stamm*, 121 F.3d at 640–42; *Office & Prof'l Employees Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 66 n. 7 (D.C.Cir.1992); *see also Carlyle Towers Condo. Ass'n, Inc. v. FDIC*, 170 F.3d 301, 305–06 & n. 2 (2d Cir.1999) (describing the requirement that post-receiver conduct is subject to exhaustion without reaching the reasonableness of the system); *Holmes Fin. Assocs. v. Resolution Trust Corp.*, 33 F.3d 561, 563 n. 1 (6th Cir.1994) (citing to *Rosa* as a "post-receivership claim" in observing that courts have unanimously inferred an exhaustion requirement).[3] Only the Tenth Circuit has gone the other way, *see Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1272–75 (10th Cir. 1994), primarily on the basis that the statutory time limit for presenting claims renders the administrative process unavailable for post-receivership claims.[4] McCarthy suggests that we have already embraced the *Homeland* rule in *Sharpe*, but all that we did was to state what *Homeland* held. *Sharpe*, 126 F.3d at

---

**2.** In *Heno v. FDIC*, 996 F.2d 429 (1st Cir. 1993) (*Heno I*), the First Circuit questioned whether FIRREA's administrative exhaustion requirement applies to post-receivership claims that arise beyond the claims bar date because both administrative and judicial review might be precluded. However, *Heno I* was subsequently withdrawn and superseded by *Heno II*, which concluded that the RTC's internal procedures could accommodate post-receivership claims.

**3.** The Eighth Circuit has noted the issue but not resolved it. *See RTC Mortgage Trust 1994–N2 v. Haith*, 133 F.3d 574, 580 (8th Cir.1998).

**4.** FIRREA requires the FDIC to mail notice of liquidation to creditors on the institution's books and to allow ninety days for filing claims. *See* 12 U.S.C. §§ 1821(d)(3)(B), (C).

1156. As those courts requiring exhaustion for post-receivership claims have pointed out, the FDIC has interpreted § 1821(d)(5)(C)(ii), which permits claimants who did not receive notice of the receiver's appointment to file after the bar date imposed by FIRREA has passed, also to permit late filing by those whose claims do not arise until after the deadline has passed. *See, e.g., Heno II,* 20 F.3d at 1209. In light of this practice (unchallenged here) and the plain language of § 1821(d)(13)(D), we cannot say that McCarthy's post-receivership claims are not susceptible of resolution through the administrative claims procedure solely because they arose after the FDIC was appointed receiver. Therefore, we join the majority of courts in holding that claimants such as McCarthy, who challenge conduct by the FDIC as receiver, must exhaust administrative remedies before seeking judicial review.

## IV

■ Finally, McCarthy submits that FIRREA's administrative claim procedures do not apply to actions against the FDIC when the FDIC fails to give proper notice that it has become the receiver for a financial institution. He suggests that to hold differently implicates due process, apparently out of concern that claimants without notice may lose their rights on account of the short time period in which claims can be filed with the FDIC. However, we have already held that failure to give notice does not render the administrative claims process inapplicable, *Intercont'l Travel Mktg. v. FDIC,* 45 F.3d 1278, 1284–86 (9th Cir.1994), and nothing in the record before us suggests that the FDIC will not entertain McCarthy's claims or that administrative and judicial review will be precluded by virtue of time limitations. *See* 12 U.S.C. § 1821(d)(5)(C)(ii)(I). Moreover, the text of the statute only mandates providing notice to "creditors." 12 U.S.C.

§ 1821(d)(3)(C); *see also, e.g., Tri–State Hotels, Inc.,* 79 F.3d at 716 ("Because [the plaintiff] is not a creditor, and is not listed on the books of [the failed financial institution] as a creditor, it was not entitled to receive notice by mail.") Beyond this, McCarthy's constitutional argument is undeveloped and we decline to consider it further.

## Conclusion

On the face of the statute, 12 U.S.C. § 1821(d)(13)(D), FIRREA's exhaustion requirement applies to *any* claim or action respecting the assets of a failed institution for which the FDIC is receiver. We have recognized some exceptions, for special situations. However, apart from claims made in connection with bankruptcy proceedings or arising out of a breach of contract fully performed by the aggrieved party but not repudiated by the receiver, all claims or actions must be submitted for administrative resolution. Accordingly, debtors as well as creditors who assert a qualifying claim or action must exhaust. Post-receivership claims arising out of acts by the receiver as well as by the failed institution are likewise subject to exhaustion. As McCarthy failed to exhaust the claims made in this action, the district court properly determined that it lacked subject matter jurisdiction. Therefore, dismissal was required.

AFFIRMED.