Opinion by Judge O’SCANNLAIN; Dissent by Judge RAWLINSON.
OPINION
O’SCANNLAIN, Circuit Judge:
We must decide whether the Federal Deposit Insurance Corporation, in its role *1134 of receiver of a closed bank, may breach underlying asset contractual obligations without consequence.
I
A
In December 2007, Professional Business Bank (“PBB”) sold to First Heritage Bank, N.A. (“Heritage”) a fifty percent participation interest in a commercial loan PBB had made to Al’s Garden Art, Inc. The terms of the PBB-Heritage Participation Agreement (“Agreement”) imposed two contractual limitations on Heritage’s interest in the loan. First, Heritage could not transfer its interest in the loan without PBB’.s prior written consent. Second, the Agreement granted PBB a right of first refusal, such that it could elect to repurchase Heritage’s loan interest upon the latter’s receipt of any bona fide third-party offer.
Within one year of executing its agreement with PBB, the Office of the Comptroller of the Currency closed Heritage and appointed the Federal Deposit Insurance Corporation (“FDIC”) to act as receiver for Heritage’s assets. By operation of 12 U.S.C. § 1821(d)(2)(A), the FDIC became successor in interest to all of Heritage’s assets and liabilities. Six months later, and without first seeking PBB’s consent or providing PBB with an opportunity to repurchase Heritage’s interest in the Al’s Garden Art loan, the FDIC sold Heritage’s interest under the Agreement to Commerce First Financial, Inc. (“CFF”).
B
Al’s Garden Art defaulted on its loan obligations, and PBB filed suit in state court seeking to collect on the loan. Shortly thereafter, CFF brought a breach of contract action against PBB to enforce the rights it acquired from the FDIC. In response, PBB counterclaimed against CFF and filed a third party complaint against the FDIC, alleging that the FDIC’s failure.to satisfy the Agreement’s pre-receivership contractual provisions constituted breach of contract.
The case was removed to the United States District Court for the Central District of California, where the FDIC filed a motion to dismiss on the grounds that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (“FIRREA”) preempted PBB’s claims. In its February 18, 2011 order, the district court denied the motion, concluding that FIRREA does not permit the FDIC to breach contracts without consequence. As the FDIC conceded breach of contract in the absence of its statutory defense, the district court granted PBB’s'motion for summary judgment in its October 4, 2011 order.[1] The FDIC timely appealed.[2]
II
Conceding that its actions otherwise constituted a breach of the Agreement, the FDIC asserts that FIRREA frees the agency from complying with any pre-re-ceivership contractual provisions related to the transfer of a failed bank’s assets. In relevant part, FIRREA provides that the FDIC, acting as receiver, may “transfer any asset or liability of the institution in default ... without any approval, assignment, or consent with respect to such transfer.” 12 U.S.C. § 1821(d)(2)(G)(i)(II). The district court held that section 1821(d)(2)(G)(i)(II) does not immunize the FDIC from damage claims if it elects to breach pre-receivership contractual arrangements. We review a district court’s *1135 statutory interpretation de novo. See Miranda v. Anchondo, 684 F.3d 844, 849 (9th Cir.2012).
A
This case does not arise in a prece-dential vacuum. We have considered on two prior occasions the scope of authority granted to the FDIC under 12 U.S.C. § 1821(d). In Sahni v. American Diversified Partners, we considered whether section 1821(d) preempted a California state statute requiring the consent or approval of all general partners prior to a transfer of the bulk of a partnership’s assets. 83 F.3d 1054, 1059 (9th Cir.1996). We determined that “[bjeeause Congress specifically exempted the FDIC from having to obtain any consent when effectuating the sale or transfer of receivership assets pursuant to 12 U.S.C. § 1821(d),” state statutes purporting to require prior approval or consent for FDIC asset transfers are preempted by FIRREA. Id. However, as the dispute between the FDIC and Bank of Manhattan involves contractual rather than statutory transfer limits, Sahni is inapposite.
More relevant to the FDIC’s section 1821(d) powers in the private-contract context is our analysis in Sharpe v. FDIC, 126 F.3d 1147 (9th Cir.1997). In Sharpe, the plaintiffs sued the FDIC as receiver for breaching a contract executed by Pioneer Bank, the FDIC’s predecessor in interest, whereby the Bank agreed to pay the Sharpes a certain sum of money in exchange for a promissory note and deed of trust. Id. at 1150-51.
The Sharpe Court considered two questions pertinent to the instant case. First, we assessed whether 12 U.S.C. § 1821(j)— which precludes courts from taking “any action ... to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver” — deprives courts of jurisdiction over breach of contract claims against the FDIC. Sharpe, 126 F.3d at 1154-55, Determining that it does not, we noted that the “statute clearly contemplates that the FDIC can escape the obligations of contracts” only through the prescribed mechanism of 12 U.S.C. § 1821(e), which “allows the FDIC to disaffirm or repudiate any contract it deems burdensome and pay only compensatory damages.” Id. at 1155. In so concluding, we stated that “FIRREA does not authorize the breach of contracts” or “preempt state law so as to abrogate state law contract rights.” Id. As such, the Sharpe panel determined that courts retain jurisdiction over equitable claims related to contractual breaches. Id.
The second question the Sharpe Court decided was whether parties to a contract breached by the FDIC were properly considered.creditors subject to FIRREA’s administrative claims process. Holding that such parties are not “creditors” under FIRREA, we reasoned that to rule otherwise “would effectively preempt state contract law.” Id. at 1156. We so concluded because FIRREA “does not indicate that Congress intended to preempt state law so broadly.” Id.
The Sharpe panel supported its conclusion regarding the narrow scope of the FDIC’s powers under section 1821(d) by explicitly adopting the D.C. Circuit’s reasoning in Waterview Management Co. v. FDIC, 105 F.3d 696 (D.C.Cir.1997). See Sharpe, 126 F.3d at 1156-57. In Waterview, the D.C. Circuit addressed nearly the same question presented here: whether section 1821(d)(2)(G)(i)(H) preempts pre-receivership purchase-option contracts. The Waterview court held that section - 1821(d) does not' preempt such contracts because “[p]re-receivership contracts are properly governed by section 1821(e), entitled ‘Provisions relating to contracts entered into before appointment of conserva *1136 tor or receiver,’ which permits repudiation of such contracts and provides for the payment of damages.” Waterview, 105 F.3d at 700. Put differently, the D.C. Circuit’s reasoning — which we explicitly adopted in Sharpe — concluded that section 1821(d) merely permits the transfer of a failed bank’s assets without prior approval, while section 1821(e) governs the mechanism by which such transfers are executed if the disputed assets are burdened by preexisting contractual obligations. Id. at 701.
B
The reasoning[3] of Sahni, Sharpe, and Waterview is clear: while section 1821(d)(2)(G)(i)(II) preempts state statutes requiring prior approval or consent for the transfer of receivership assets, it does not extend to the sphere of private contracts. Instead, section 1821(e) governs the FDIC’s treatment of assets burdened by pre-receivership contractual limitations. Should the FDIC violate pre-receivership contracts rather than repudiate them under section 1821(e), Sharpe and Waterview make clear that section 1821(d)(2)(G)(i)(II) does not afford the agency immunity from subsequent actions for breach of contract.
To rule otherwise would permit the FDIC to succeed to powers greater than those held by the insolvent bank, an implausible result when FIRREA provides that the FDIC, as receiver, “shall ... succeed to all rights, titles, powers, and privileges of the insured depository institution.” 12 U.S.C. § 1821(d)(2)(A). It is true that “some provision in the extensive framework of FIRREA” might, in theory, afford the FDIC as receiver greater powers than those possessed by a failed financial institution. O’Melveny & Myers v. FDIC, 512 U.S. 79, 86-87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). However, in light of Sahni, Sharpe, and Waterview, we conclude that section 1821(d)(2)(G)(i)(II) is not such a provision. Therefore, we agree with the Sharpe panel that FIRREA “does not preempt state law so as to abrogate state law contract rights,” since “it cannot be the case that the FDIC is in a better position when it breaches a contract than when it chooses to repudiate pursuant to § 1821(e).” Sharpe, 126 F.3d at 1155, 1157.[4]
C
Despite the clear statement of the Sah-ni, Sharpe, .and Waterview decisions that “FIRREA does not authorize the breach of contracts,” Sharpe, 126 F.3d at 1155, the FDIC argues that subsequent case law has limited those cases such that the quoted language is no longer good law. Its arguments are unpersuasive.
*1137 This Court has revisited the Sharpe decision on several occasions. However, our subsequent decisions have never purported to limit the conclusion that section 1821(d)(2)(G) does not permit the FDIC to breach pre-receivership contracts without consequence. Rather, these decisions all addressed subsidiary questions while leaving untouched Sharpe’s reasoning as to whether FIRREA authorizes the unrestrained breach of contract. See, e.g., McCarthy v. FDIC, 348 F.3d 1075,1077-81 (9th Cir.2003) (addressing whether debtors are subject to FIRREA’s administrative claim exhaustion requirements); Battista v. FDIC, 195 F.3d 1113, 1115, 1119-20 (9th Cir.1999) (considering whether parties to a repudiated contract were entitled to payment in cash rather than receiver’s certificates).[5] Accordingly, Sharpe’s conclusion that FIRREA does not permit the FDIC to avoid liability for the breach of pre-receivership contracts is still good law.
D
Finally, the FDIC advarices two novel arguments related to the viability of pre-receivership contracts in light of Congress’s passage of FIRREA. First, the agency contends that because FIRREA predates the Agreement, the written consent and right of first refusal provisions are invalid and unenforceable in light of the Supreme Court’s recognition that “no contract can properly be carried into effect, which was originally made contrary to
the provisions of law.” Louisville & Nashville R.R. Co. v. Mottley, 219 U.S. 467, 485, 31 S.Ct. 265, 55 L.Ed. 297 (1911) (citation omitted). The FDIC’s argument is premised upon the contention that the Agreement’s consent and right of first refusal provisions conflict with § 1821(d)(2)(G) insofar as they limit the transferability of FDIC receivership assets. However, the Waterview decision expressly determined “that there is no conflict between the continued enforcement of pre-receivership [contracts] and 12 U.S.C. § 1821(d)(2)(G)(i)(II).” 105 F.3d at 700. Accordingly, such argument is unpersuasive.
In a similar vein, the FDIC asserts that because Sahni held that section 1821(d)(2)(G) preempts state statutes requiring prior consent or approval, contractual' obligations must also be preempted. In support of its claim, the FDIC cites Norfolk & Western Railway Co. v. American Train Dispatchers’ Ass’n, 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991), which reasoned that a “contract has no legal force apart from the law that acknowledges its binding character.” Id. at 130, 111 S.Ct. 1156. As the Sharpe and Waterview decisions demonstrate that FIRREA acknowledges the “binding character” of pre-receivership contracts, our decision today in no way conflicts with Norfolk.
*1138 III
It is undisputed that the FDIC transferred Heritage’s interest in the Al’s Garden Art loan in contravention of the Agreement’s consent and right of first refusal provisions. As section 1821(d)(2)(G)(i)(II) does not immunize the FDIC from breach of pre-receivership contract claims, we conclude that the district . court did not err in rejecting the FDIC’s claimed statutory defense and entering judgment against the FDIC for its breach of the Agreement.
AFFIRMED.

. On May 31, 2012, Bank of Manhattan acquired PBB and was thereafter substituted in the case.

. We have jurisdiction pursuant to 28 U.S.C. § 1291.

. "Well-reasoned dicta is the law of the circuit.” Enying Li v. Holder, 738 F.3d 1160, 1164 n. 2 (9th Cir.2013) (citing United States v. Johnson, 256 F.3d 895, 914 (9th Cir.2001) (en banc)).

. The dissent is correct in observing that 12 U.S.C. § 1821(e) — which expressly governs "[pjrovisions relating to contracts entered into before appointment of conservator or receiver” — limits the FDIC's liability to "actual direct compensatory damages,” and specifically precludes recovery of "damages for lost profits or opportunity.” 12 U.S.C. § 1821(e)(3). However, section 1821(e)(3)’s damages limitations are triggered only when the FDIC properly repudiates pre-receivership contracts pursuant to section 1821(e)(1). See 12 U.S.C. § 1821(e)(3)(A) (conditioning section 1821(e)(3)’s protections on "the disaf-firmance or repudiation of any contract pursuant to paragraph (1)”). As the FDIC did not repudiate the Agreement, section 1821(e)(3) is inapposite.
Furthermore, the FDIC in this case seeks blanket immunity for the breach of pre-receiv-ership contracts, not a mere limitation on the form or amount of damages Bank of Manhattan can recover. As such, section 1821(e)(3)’s recovery limitations are immaterial to the case before us.

. Most recently, we addressed the merits of the Sharpe opinion in Deutsche Bank National Trust Co. v. FDIC, 744 F.3d 1124 (9th Cir. 2014). The Deutsche Bank panel reviewed a district court order which held, inter alia, that section 1821(d)(2)(G) "does not permit FDIC to circumvent its statutory obligation either to honor a failed institution's contracts, or to repudiate them and pay damages.” Deutsche Bank Nat. Trust Co. v. FDIC, 784 F.Supp.2d 1142, 1151 (C.D.Cal.2011). However, while the district court's section 1821(d)(2)(G) ruling addressed the same question we decide today, that issue was not presented to us in the Deutsche Bank appeal. Instead, we confined our analysis to the specific question certified by the district court for interlocutory appeal, namely, whether the appellant’s claims "constitute[d] third-tier general liabilities under 12 U.S.C. § 1821(d)(ll)(A)(iii) rather than claims payable outside the strictures of § 1821(d).” Deutsche Bank, 744 F.3d at 1129. Accordingly, that decision did not disturb Sharpe's determination that FIRREA does not authorize the FDIC to breach pre-receivership contracts without consequence.