**WATERVIEW MANAGEMENT COMPANY, et al.,
Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee.**

No. 96–5110.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 16, 1996.

Decided Jan. 31, 1997.

James T. Lewis, argued the cause and filed the briefs, for appellants.

Thomas C. Bahlo, Counsel, Federal Deposit Insurance Corporation, argued the cause for appellee, with whom Ann S. DuRoss, Assistant General Counsel, and Colleen B. Bombardier, Senior Counsel, were on the brief. Jeffrey P. Bloom, Washington, DC, entered an appearance.

Before: EDWARDS, Chief Judge, GINSBURG and RANDOLPH, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

This case concerns, *inter alia,* the status of a purchase option and marketing agreement for a tract of land when the Resolution Trust Corporation ("RTC") is acting as conservator or receiver for the financial institution that signed the agreement. The agreement at issue, between PortAmerica Associates and HomeFed Bank ("HomeFed"), gave Waterview Management Company ("Waterview") an exclusive option to market and purchase the "HomeFed tract" in Prince George's County, Maryland.

Waterview brought suit in District Court on claims arising out of the RTC's post-receivership breach of this agreement and another agreement allegedly entered into by Waterview and the RTC acting as conservator and receiver for HomeFed. The District Court dismissed three claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1): a request for declaratory relief and the creation of a constructive trust; misappropriation of trade secrets; and misappropriation of trademark. The District Court dismissed four additional claims for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6): fraud; breach of contract; breach of fiduciary duty and the covenant of good faith; and negligence.

We affirm the District Court's rulings on almost all issues arising out of the alleged agreements, with the sole exception being the question whether the RTC as conservator and receiver for HomeFed effectively "repudiated" the purchase option and marketing agreement when it advertised the HomeFed tract for sale. We find that the District Court erred as a matter of law in concluding that the Financial Institutions Re-

form, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(2)(G)(i)(II) (1994), preempted the agreement and made repudiation unnecessary.

Pre-receivership purchase option and marketing contracts create valid state law rights that are not inconsistent with the RTC's power as a conservator or receiver under 12 U.S.C. § 1821(d)(2)(G)(i)(II) to transfer the assets of the failed institution without consent. The RTC can repudiate such contracts under FIRREA, 12 U.S.C. § 1821(e)(1) (1994), but it cannot simply claim that they are preempted. Federal law preempts state law only where there is a conflict between them. Here state law defines the scope of the pre- receivership contract asset held by the failed institution. Federal law simply provides that the RTC can transfer the asset held by the failed institution without consent. State contract law thus defines the nature of the asset that federal law allows the agency to transfer without consent. A federal agency cannot use 12 U.S.C. § 1821(d)(2)(G)(i)(II) to avoid pre-receivership contracts in an effort to increase the asset beyond what was held by the failed institution. When the RTC acted in defiance of the pre-receivership contract, it effectively repudiated the agreement. This was lawful so long as the RTC adhered to the terms of 12 U.S.C. § 1821(e). We therefore remand this case to the District Court to determine whether Waterview is entitled to any damages resulting from the RTC's repudiation of its purchase option agreement.

## I. BACKGROUND

### A. The HomeFed Agreement

On January 15, 1992, HomeFed and PortAmerica Associates reached a settlement agreement in negotiations arising out of a mortgage default by PortAmerica, the "HomeFed Agreement." PortAmerica Associates had defaulted on a loan of $20,685,000 from HomeFed for the development of an area of Prince George's County immediately across the Woodrow Wilson bridge. The project included two major land masses, the "HomeFed tract," which was purchased with the loan from HomeFed and used to secure the note, and the "Upper tract." By virtue of the settlement agreement, HomeFed foreclosed upon and took title to the HomeFed tract. The agreement also established Waterview, permitted Waterview to proceed with obtaining the necessary permits and approvals for the development of the HomeFed tract, and gave Waterview exclusive marketing rights and an exclusive option to purchase the HomeFed tract for a period of eighteen months from the date of the HomeFed Agreement with three possible extensions of six months each.

On July 6, 1992, by order of the Office of Thrift Supervision, the RTC was appointed receiver for HomeFed Bank, F.S.B. and conservator for HomeFed Bank, F.A. In February 1993, representatives of the RTC and Waterview held a meeting. The RTC indicated that it was interested in a quick sale of the HomeFed tract rather than the long-term option held by Waterview under the HomeFed Agreement. The RTC advertised the land by listing it for sale in its Winter/Spring 1993 catalogue for six million dollars. Waterview claims that advertisement violated its marketing and purchase option rights under the HomeFed Agreement.

### B. The Proceedings Below

Waterview brought a variety of claims arising out of the HomeFed Agreement and another agreement allegedly entered into by the RTC in which it agreed to sell the HomeFed tract to Waterview for the highest of six million dollars or one of two appraisals. Specifically, Waterview sued the RTC alleging: (i) the court should impose a constructive trust and grant declaratory relief and specific performance of the agreements; (ii) fraud, misrepresentation, and concealment during the appraisal process; (iii) breach of fiduciary duty and the covenant of good faith; (iv) breach of contract; (v) negligence; (vi) misappropriation of trade secrets and proprietary information during the appraisal process; and (vii) misappropriation of trademark.

The District Court dismissed all of Waterview's claims against the Federal Deposit

Insurance Corporation ("FDIC") [1] arising out of the two alleged agreements. Most importantly, it found the HomeFed Agreement incapable of supporting a breach of contract claim. In the District Court's view, FIRREA, 12 U.S.C. § 1821(d)(2)(G)(i)(II) (1994), preempted the HomeFed Agreement. *See Waterview Management Co. v. RTC*, No. 94–1930 (D.D.C. Mar. 11, 1996) (mem.), *reprinted in* Joint Appendix ("J.A.") 69. On the other claims, the District Court found: (i) under FIRREA, 12 U.S.C. § 1821(j), it lacked the authority to order declaratory relief or specific performance; (ii) because of Waterview's failure to exhaust its administrative remedies, it lacked subject matter jurisdiction over Waterview's misappropriation of trade secrets and trademark claims arising out of the appraisal process; (iii) the alleged agreement entered into by the RTC violated the Statute of Frauds and was therefore invalid; (iv) any duties of good faith arising out of the contracts were not enforceable, and there was no breach of fiduciary duty; (v) Waterview's complaint of fraud was stated with particularity only with regard to its claim that an RTC attorney said that the 1993 appraisals had been done for park or conservation uses of the property, but even with regard to this claim, Waterview failed to show the requisite detrimental reliance; and finally, (vi) Waterview failed to state a claim for negligence, because it failed to show the RTC owed it a duty of care. *Id.*

## II. Analysis

### A. The Standard of Review

■ The dismissal of a complaint under Federal Rule of Civil Procedure 12(b) is reviewed *de novo. See, e.g., Yamaha Corp. of America v. United States*, 961 F.2d 245, 253–54 (D.C.Cir.1992).

### B. 12 U.S.C. § 1821(d)(2)(G)(i)(II) and Pre–Receivership Purchase Option Contracts

■ The District Court dismissed appellant Waterview's claim of breach of the HomeFed Agreement because it found that

FIRREA, 12 U.S.C. § 1821(d)(2)(G)(i)(II), which permits a federal agency acting as conservator or receiver to "transfer any asset or liability of the institution in default … without any approval, assignment, or consent with respect to such transfer," preempts Waterview's purchase option and marketing rights created under state law. The District Court adopted the RTC's argument that this section should be construed to preempt any state law right that affects the receiver's ability to sell the property. Under this analysis, the District Court determined that, because Waterview's contract rights are preempted, the RTC owes Waterview no damages. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521, 112 S.Ct. 2608, 2619–20, 120 L.Ed.2d 407 (1992) (explaining that damage actions can be used to enforce state regulations as effectively as other forms of preventive relief and thus damage actions must be preempted where positive enactments are preempted). We reject the District Court's view of the statute.

FIRREA does not provide a blanket "preemption" of all valid pre-receivership contracts. Indeed, to hold that the federal government could simply vitiate the terms of existing assets, taking rights of value from private owners with no compensation in return, would raise serious constitutional issues. We do not read the statute in this way. Rather, under the statute, the RTC can avoid the obligations imposed by such agreements only by repudiating them in accord with FIRREA, 12 U.S.C. § 1821(e)(1), and paying damages in accord with FIRREA, 12 U.S.C. § 1821(e)(3).

Preemption occurs only where state law conflicts with federal law, and there is no conflict between the RTC's ability to transfer the assets held by the failed financial institution pursuant to 12 U.S.C. § 1821(d)(2)(G)(i)(II) and the enforcement of valid state law contract rights. Such state law contracts entered into pre-receivership serve to define the asset held by the failed financial institution. It is merely this asset that can be transferred without consent un-

---

1. The RTC substituted the FDIC as defendant pursuant to the Resolution Trust Corporation

Completion Act, 12 U.S.C. § 1441a(m)(1), (2) (1994).

der federal law, not the asset free from outstanding claims.[2]

### 1. The Law of Preemption

Preemption of state law occurs in three situations: first, *field preemption,* which occurs when Congress so thoroughly occupies a legislative field that it is reasonable to assume that Congress left no room for the states to supplement it, *see Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617; second, *express preemption,* which occurs when Congress explicitly states its intent to preempt state law, *see Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977); and third, *conflict preemption,* which occurs when compliance with state law is rendered impossible, *see Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986), or when state law stands as an obstacle to the accomplishment of Congress's goals. *Id.* at 368–69, 106 S.Ct. at 1898–99.

In this case, as counsel for the RTC agreed in oral argument, it is clear that, prior to the entry of the RTC as receiver, the agreement between Waterview and HomeFed giving Waterview an exclusive purchase option created a valid legal right under state law. Thus, the only question here is whether this state interest was somehow "preempted" once the RTC took over HomeFed as conservator or receiver. This question is not difficult, because there surely is no preemption in this case.

FIRREA does not preempt the field of state contract law, so field preemption does not extinguish Waterview's pre-receivership

contract right. Furthermore, although FIRREA contains an express preemption provision, which provides that when an agency is acting as conservator or receiver, it "shall not be subject to the direction or supervision of … any State in the exercise of [its] rights, powers, and privileges," 12 U.S.C. § 1821(c)(2)(C) (1994), recognizing the continued validity of lawful pre-receivership contracts does not subject the RTC to the direction or supervision of the state. It merely uses state law to define the nature of the asset held by the failed institution and passed on to the RTC. Thus, the express preemption provision does not indicate a congressional intent to preempt pre-receivership contracts. Finally, for the reasons set forth below, in part 2., we find no conflict preemption.

### 2. Reconciling the Transferability and Repudiation Provisions of FIRREA

We find that there is no conflict between the continued enforcement of pre-receivership purchase option and marketing agreements and 12 U.S.C. § 1821(d)(2)(G)(i)(II). We therefore reject the RTC's argument that 12 U.S.C. § 1821(d)(2)(G)(i)(II) preempts such agreements. Pre-receivership contracts are properly governed by section 1821(e), entitled "Provisions relating to contracts entered into before appointment of conservator or receiver," which permits repudiation of such contracts and provides for the payment of damages. Section 1821(d)(2)(G)(i)(II), entitled "Powers and duties of Corporation as conservator or receiver," addresses the scope of the RTC's authority as a conservator or receiver.[3] Sec-

---

**2.** Consistent with our opinion in this case, the Second Circuit has recognized that, where the RTC sells an asset in breach of a post-receivership agreement, the RTC may be required to pay damages, though the court cannot grant equitable relief by virtue of 12 U.S.C. § 1821(j). *See Volges v. RTC,* 32 F.3d 50, 53 (2d Cir.1994) (The RTC stipulated that, though the court could not grant equitable relief, the Volges would be permitted to bring a damages action.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2618, 132 L.Ed.2d 860 (1995).

A few district courts have found that § 1821(d)(2)(G)(i)(II) "preempts" pre-receivership purchase option contracts, *see, e.g., NVMercure Ltd. Partnership v. RTC,* 871 F.Supp. 488,

491 (D.D.C.1994); *RTC v. Charles House Condominium Ass'n,* 853 F.Supp. 226, 229–30 (E.D.La. 1994). We do not believe that the rationale of these opinions survives scrutiny under the statute.

**3.** We do not decide the impact of § 1821(d)(2)(G)(i)(II) on the authority of a federal agency acting as conservator or receiver for a financial institution that holds an asset as a limited or general partner. Unlike the case before us today, which deals with asset definition, such a situation raises a question about the operating authority of a conservator or receiver. *See Sahni v. American Diversified Partners,* 83 F.3d 1054, 1059 (9th Cir.) (suggesting that a California Code Provision that limits a general partner's authority

tion 1821(d)(2)(G)(i)(II) permits the RTC, in its capacity as a conservator or receiver, to sell assets in its possession without obtaining any prior approval. Section 1821(e) explains how this power works with regard to contracts entered into pre-receivership: if the RTC prefers to transfer an asset without pre-existing limitations, then the RTC can abrogate a contract containing limitations, such as a purchase option or marketing rights, but it must pay damages to the option holder. Understood this way, pre-receivership purchase option agreements do not implicate preemption doctrine because there simply is no conflict between the RTC's power to transfer the assets of a failed financial institution without consent and state law contract rights of the sort at issue in this case.

■ The structure of FIRREA compels this reading of the statute. FIRREA provides that when an agency acts as conservator or receiver, the agency succeeds to,

> (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution;....

12 U.S.C. § 1821(d)(2)(A)(i) (1994). As the conservator and receiver for HomeFed, the RTC thus stepped "in the shoes" of HomeFed in its relationship with Waterview. *Cf. O'Melveny & Myers v. FDIC*, 512 U.S. 79, ——, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994) ("§ 1821(d)(2)(A)(i) places [the federal agency] in the shoes of the insolvent S & L."). If we adopted the RTC's argument in this case, we would effectively allow the agency to succeed to an interest greater than that held by the failed institution. Section 1821(d)(2)(A)(i), however, provides that the agency succeeds to only the "assets of the institution." In other words, section 1821(d)(2)(G)(i)(II), consistent with section 1821(d)(2)(A)(i), does not permit the RTC to increase the value of the asset in its hands by simply "preempting" out of existence pre-receivership contractual obligations.

This construction of the statute accords with Congress's general directive to the RTC that it carry out its duties in a manner that "minimizes the impact ... on local real estate and financial markets." 12 U.S.C. § 1441a(b)(3)(C)(ii) (1994). Ensuring that the RTC is bound by pre-receivership contracts promotes stability and security of contract.

■ Finally, and perhaps most importantly, this construction of the statute is compelled by the canon of statutory construction that statutes should be construed to avoid a possible unconstitutional result, *United States v. Rumely*, 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953) (" 'It is our duty in the interpretation of federal statutes to reach a conclusion which will avoid serious doubt of their constitutionality.' " (quoting *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 346, 48 S.Ct. 194, 198, 72 L.Ed. 303 (1928))).

In response to a question at oral argument, counsel for the RTC argued that, according to the agency's reading of section 1821(d)(2)(G)(i)(II), even an easement that existed prior to receivership would be "preempted" out of existence without any compensation to the holder, because such an interest impairs the government's ability to transfer the asset. This position is quite astonishing. To read the statute, as the RTC suggests, to permit a federal agency acting as conservator or receiver to sell assets in disregard of all pre-receivership rights, raises significant constitutional questions under the takings clause.

The takings clause prohibits the taking of "private property ... for public use, without just compensation." U.S. Const. amend. V. The Court has recognized that property includes, "the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." *United States v. General Motors Corp.*, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945). Whether an option to purchase land,

---

to "[d]o any act which would make it impossible to carry on the ordinary business of the partnership" without the consent of the limited partners and therefore prevents the transfer of partnership assets may be preempted by § 1821(d)(2)(G)(i)(II), *cert. denied,* —— U.S. ——, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997) .

like that at issue in this case, constitutes such a protected right is an open question, depending on state law. *See, e.g., Pro–Eco, Inc. v. Board of Comm'rs of Jay County, IN,* 57 F.3d 505, 509 (7th Cir.) (While California recognizes a compensable property right in unexercised options to purchase real estate, Indiana does not.), *cert. denied,* ——— U.S. ———, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995). It is certainly clear, however, that other interests that limit alienability—like an easement—almost invariably will constitute compensable property interests. *See* 26 Am.Jur. *Eminent Domain* 2d § 283 at 697 (1996). Such property interests cannot be regulated out of existence without compensation under the takings clause. We need not decide the constitutional status of an option, however, for our reading of the statute avoids this question.

While we find that the RTC should have repudiated the purchase option contract and note that damages are available for repudiated contracts, it is not at all clear to us that Waterview, in fact, has sustained any compensable damages.[4] Accordingly, we remand to the District Court the question whether Waterview is owed damages.

## C. All Other Claims

We affirm the decision of the District Court dismissing appellant Waterview's other claims substantially for the reasons given by the District Court.

## III. CONCLUSION

We affirm the District Court's decision dismissing all of appellant Waterview's claims, save the District Court's decision that a pre-receivership purchase and marketing option was preempted by FIRREA, 12 U.S.C. § 1821(d)(2)(G)(i)(II). We find the RTC was required to repudiate this pre-receivership agreement and remand to the District Court for a determination of damages, if any.

---

4. Damages for repudiated contracts are limited to "actual direct compensatory damages." 12 U.S.C. § 1821(e)(3)(A)(i) (1994). The statute specifically excludes "damages for lost profits or opportunity." 12 U.S.C. § 1821(e)(3)(B)(ii) (1994).