**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BANK OF MANHATTAN, N.A., *Plaintiff-Appellee*, | No. 12-56737 |
| | D.C. No. 2:10-cv-04614-GAF-AGR |
| v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for First Heritage Bank, N.A., *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
August 28, 2014—Pasadena, California

Filed March 4, 2015

Before: Diarmuid F. O'Scannlain, Johnnie B. Rawlinson,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Rawlinson

## SUMMARY[*]

### FDIC

The panel affirmed the district court's summary judgment in favor of the Bank of Manhattan, N.A. on its breach of contract claim, and held that the Federal Deposit Insurance Corporation, in its role of receiver of a closed bank, may not breach underlying asset contractual obligations without consequence.

The panel held that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821(d)(2)(G)(i)(II), did not immunize the FDIC from breach of pre-receivership contract claims. The panel concluded that the district court did not err in rejecting the FDIC's claimed statutory defense and entering judgment against the FDIC for its breach of a participation agreement.

Dissenting, Judge Rawlinson would reverse the district court's ruling that FIRREA did not preempt Bank of Manhattan's claim based on this court's prior opinion in *Sahni v. American Diversified Partners*, 83 F.3d 1054 (9th Cir. 1996).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

J. Scott Watson, Federal Deposit Insurance Corporation, Arlington, Virginia, argued the cause on behalf of Defendant-Appellant.  Minodora D. Vancea, Federal Deposit Insurance Corporation, Arlington, Virginia, filed the opening and reply briefs.  With her on the opening brief were Watson, Colleen J. Boles, and Lawrence H. Richmond, Federal Deposit Insurance Corporation, Arlington, Virginia.  With her on the reply brief were Boles, Watson, and Kathryn R. Norcross, Federal Deposit Insurance Corporation, Arlington, Virginia.

Richard W. Esterkin, Morgan, Lewis & Bockius LLP, Los Angeles, California, argued the cause and filed the brief on behalf of Plaintiff-Appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether the Federal Deposit Insurance Corporation, in its role of receiver of a closed bank, may breach underlying asset contractual obligations without consequence.

I

A

In December 2007, Professional Business Bank ("PBB") sold to First Heritage Bank, N.A. ("Heritage") a fifty percent participation interest in a commercial loan PBB had made to Al's Garden Art, Inc.  The terms of the PBB-Heritage

Participation Agreement ("Agreement") imposed two contractual limitations on Heritage's interest in the loan. First, Heritage could not transfer its interest in the loan without PBB's prior written consent. Second, the Agreement granted PBB a right of first refusal, such that it could elect to repurchase Heritage's loan interest upon the latter's receipt of any bona fide third-party offer.

Within one year of executing its agreement with PBB, the Office of the Comptroller of the Currency closed Heritage and appointed the Federal Deposit Insurance Corporation ("FDIC") to act as receiver for Heritage's assets. By operation of 12 U.S.C. § 1821(d)(2)(A), the FDIC became successor in interest to all of Heritage's assets and liabilities. Six months later, and without first seeking PBB's consent or providing PBB with an opportunity to repurchase Heritage's interest in the Al's Garden Art loan, the FDIC sold Heritage's interest under the Agreement to Commerce First Financial, Inc. ("CFF").

B

Al's Garden Art defaulted on its loan obligations, and PBB filed suit in state court seeking to collect on the loan. Shortly thereafter, CFF brought a breach of contract action against PBB to enforce the rights it acquired from the FDIC. In response, PBB counterclaimed against CFF and filed a third party complaint against the FDIC, alleging that the FDIC's failure to satisfy the Agreement's pre-receivership contractual provisions constituted breach of contract.

The case was removed to the United States District Court for the Central District of California, where the FDIC filed a motion to dismiss on the grounds that the Financial

Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") preempted PBB's claims.  In its February 18, 2011 order, the district court denied the motion, concluding that FIRREA does not permit the FDIC to breach contracts without consequence.  As the FDIC conceded breach of contract in the absence of its statutory defense, the district court granted PBB's motion for summary judgment in its October 4, 2011 order.[1]  The FDIC timely appealed.[2]

II

Conceding that its actions otherwise constituted a breach of the Agreement, the FDIC asserts that FIRREA frees the agency from complying with *any* pre-receivership contractual provisions related to the transfer of a failed bank's assets.  In relevant part, FIRREA provides that the FDIC, acting as receiver, may "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer."  12 U.S.C. § 1821(d)(2)(G)(i)(II).  The district court held that section 1821(d)(2)(G)(i)(II) does not immunize the FDIC from damage claims if it elects to breach pre-receivership contractual arrangements.  We review a district court's statutory interpretation de novo.  *See Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012).

---

[1] On May 31, 2012, Bank of Manhattan acquired PBB and was thereafter substituted in the case.

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291.

A

This case does not arise in a precedential vacuum. We have considered on two prior occasions the scope of authority granted to the FDIC under 12 U.S.C. § 1821(d). In *Sahni v. American Diversified Partners*, we considered whether section 1821(d) preempted a California state statute requiring the consent or approval of all general partners prior to a transfer of the bulk of a partnership's assets. 83 F.3d 1054, 1059 (9th Cir. 1996). We determined that "[b]ecause Congress specifically exempted the FDIC from having to obtain any consent when effectuating the sale or transfer of receivership assets pursuant to 12 U.S.C. § 1821(d)," state statutes purporting to require prior approval or consent for FDIC asset transfers are preempted by FIRREA. *Id*. However, as the dispute between the FDIC and Bank of Manhattan involves contractual rather than statutory transfer limits, *Sahni* is inapposite.

More relevant to the FDIC's section 1821(d) powers in the private-contract context is our analysis in *Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir. 1997). In *Sharpe*, the plaintiffs sued the FDIC as receiver for breaching a contract executed by Pioneer Bank, the FDIC's predecessor in interest, whereby the Bank agreed to pay the Sharpes a certain sum of money in exchange for a promissory note and deed of trust. *Id*. at 1150–51.

The *Sharpe* Court considered two questions pertinent to the instant case. First, we assessed whether 12 U.S.C. § 1821(j)—which precludes courts from taking "any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver"—deprives courts of jurisdiction over breach of contract claims against the FDIC.

*Sharpe*, 126 F.3d at 1154–55. Determining that it does not, we noted that the "statute clearly contemplates that the FDIC can escape the obligations of contracts" only through the prescribed mechanism of 12 U.S.C. § 1821(e), which "allows the FDIC to disaffirm or repudiate any contract it deems burdensome and pay only compensatory damages." *Id.* at 1155. In so concluding, we stated that "FIRREA does not authorize the breach of contracts" or "preempt state law so as to abrogate state law contract rights." *Id*. As such, the *Sharpe* panel determined that courts retain jurisdiction over equitable claims related to contractual breaches. *Id*.

The second question the *Sharpe* Court decided was whether parties to a contract breached by the FDIC were properly considered creditors subject to FIRREA's administrative claims process. Holding that such parties are not "creditors" under FIRREA, we reasoned that to rule otherwise "would effectively preempt state contract law." *Id*. at 1156. We so concluded because FIRREA "does not indicate that Congress intended to preempt state law so broadly." *Id*.

The *Sharpe* panel supported its conclusion regarding the narrow scope of the FDIC's powers under section 1821(d) by explicitly adopting the D.C. Circuit's reasoning in *Waterview Management Co. v. FDIC*, 105 F.3d 696 (D.C. Cir. 1997). *See Sharpe*, 126 F.3d at 1156–57. In *Waterview*, the D.C. Circuit addressed nearly the same question presented here: whether section 1821(d)(2)(G)(i)(II) preempts pre-receivership purchase-option contracts. The *Waterview* court held that section 1821(d) does not preempt such contracts because "[p]re-receivership contracts are properly governed by section 1821(e), entitled 'Provisions relating to contracts entered into before appointment of conservator or receiver,'

which permits repudiation of such contracts and provides for the payment of damages." *Waterview*, 105 F.3d at 700. Put differently, the D.C. Circuit's reasoning—which we explicitly adopted in *Sharpe*—concluded that section 1821(d) merely permits the transfer of a failed bank's assets without prior approval, while section 1821(e) governs the mechanism by which such transfers are executed if the disputed assets are burdened by pre-existing contractual obligations. *Id*. at 701.

## B

The reasoning[3] of *Sahni*, *Sharpe*, and *Waterview* is clear: while section 1821(d)(2)(G)(i)(II) preempts state statutes requiring prior approval or consent for the transfer of receivership assets, it does not extend to the sphere of private contracts. Instead, section 1821(e) governs the FDIC's treatment of assets burdened by pre-receivership contractual limitations. Should the FDIC violate pre-receivership contracts rather than repudiate them under section 1821(e), *Sharpe* and *Waterview* make clear that section 1821(d)(2)(G)(i)(II) does not afford the agency immunity from subsequent actions for breach of contract.

To rule otherwise would permit the FDIC to succeed to powers greater than those held by the insolvent bank, an implausible result when FIRREA provides that the FDIC, as receiver, "shall . . . succeed to all rights, titles, powers, and privileges of the insured depository institution." 12 U.S.C. § 1821(d)(2)(A). It is true that "some provision in the extensive framework of FIRREA" might, in theory, afford the

---

[3] "Well-reasoned dicta is the law of the circuit." *Enying Li v. Holder*, 738 F.3d 1160, 1164 n.2 (9th Cir. 2013) (citing *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc)).

FDIC as receiver greater powers than those possessed by a failed financial institution. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86–87 (1994). However, in light of *Sahni*, *Sharpe*, and *Waterview*, we conclude that section 1821(d)(2)(G)(i)(II) is not such a provision. Therefore, we agree with the *Sharpe* panel that FIRREA "does not preempt state law so as to abrogate state law contract rights," since "it cannot be the case that the FDIC is in a better position when it breaches a contract than when it chooses to repudiate pursuant to § 1821(e)." *Sharpe*, 126 F.3d at 1155, 1157.[4]

C

Despite the clear statement of the *Sahni*, *Sharpe*, and *Waterview* decisions that "FIRREA does not authorize the breach of contracts," *Sharpe*, 126 F.3d at 1155, the FDIC argues that subsequent case law has limited those cases such that the quoted language is no longer good law. Its arguments are unpersuasive.

---

[4] The dissent is correct in observing that 12 U.S.C. § 1821(e)—which expressly governs "[p]rovisions relating to contracts entered into before appointment of conservator or receiver"—limits the FDIC's liability to "actual direct compensatory damages," and specifically precludes recovery of "damages for lost profits or opportunity." 12 U.S.C. § 1821(e)(3). However, section 1821(e)(3)'s damages limitations are triggered only when the FDIC properly repudiates pre-receivership contracts pursuant to section 1821(e)(1). *See* 12 U.S.C. § 1821(e)(3)(A) (conditioning section 1821(e)(3)'s protections on "the disaffirmance or repudiation of any contract pursuant to paragraph (1)"). As the FDIC did not repudiate the Agreement, section 1821(e)(3) is inapposite.

Furthermore, the FDIC in this case seeks blanket immunity for the breach of pre-receivership contracts, not a mere limitation on the form or amount of damages Bank of Manhattan can recover. As such, section 1821(e)(3)'s recovery limitations are immaterial to the case before us.

This Court has revisited the *Sharpe* decision on several occasions. However, our subsequent decisions have never purported to limit the conclusion that section 1821(d)(2)(G) does not permit the FDIC to breach pre-receivership contracts without consequence. Rather, these decisions all addressed subsidiary questions while leaving untouched *Sharpe*'s reasoning as to whether FIRREA authorizes the unrestrained breach of contract. *See, e.g.*, *McCarthy v. FDIC*, 348 F.3d 1075, 1077–81 (9th Cir. 2003) (addressing whether debtors are subject to FIRREA's administrative claim exhaustion requirements); *Battista v. FDIC*, 195 F.3d 1113, 1115, 1119–20 (9th Cir. 1999) (considering whether parties to a repudiated contract were entitled to payment in cash rather than receiver's certificates).[5]          Accordingly, *Sharpe*'s conclusion that FIRREA does not permit the FDIC to avoid liability for the breach of pre-receivership contracts is still good law.

---

[5] Most recently, we addressed the merits of the *Sharpe* opinion in *Deutsche Bank National Trust Co. v. FDIC*, 744 F.3d 1124 (9th Cir. 2014). The *Deutsche Bank* panel reviewed a district court order which held, *inter alia*, that section 1821(d)(2)(G) "does not permit FDIC to circumvent its statutory obligation either to honor a failed institution's contracts, or to repudiate them and pay damages." *Deutsche Bank Nat. Trust Co. v. FDIC*, 784 F. Supp. 2d 1142, 1151 (C.D. Cal. 2011). However, while the district court's section 1821(d)(2)(G) ruling addressed the same question we decide today, that issue was not presented to us in the *Deutsche Bank* appeal. Instead, we confined our analysis to the specific question certified by the district court for interlocutory appeal, namely, whether the appellant's claims "constitute[d] third-tier general liabilities under 12 U.S.C. § 1821(d)(11)(A)(iii) rather than claims payable outside the strictures of § 1821(d)." *Deutsche Bank*, 744 F.3d at 1129. Accordingly, that decision did not disturb *Sharpe*'s determination that FIRREA does not authorize the FDIC to breach pre-receivership contracts without consequence.

## D

Finally, the FDIC advances two novel arguments related to the viability of pre-receivership contracts in light of Congress's passage of FIRREA. First, the agency contends that because FIRREA predates the Agreement, the written consent and right of first refusal provisions are invalid and unenforceable in light of the Supreme Court's recognition that "no contract can properly be carried into effect, which was originally made contrary to the provisions of law." *Louisville & Nashville R.R. Co. v. Mottley*, 219 U.S. 467, 485 (1911) (citation omitted). The FDIC's argument is premised upon the contention that the Agreement's consent and right of first refusal provisions conflict with § 1821(d)(2)(G) insofar as they limit the transferability of FDIC receivership assets. However, the *Waterview* decision expressly determined "that there is no conflict between the continued enforcement of pre-receivership [contracts] and 12 U.S.C. § 1821(d)(2)(G)(i)(II)." 105 F.3d at 700. Accordingly, such argument is unpersuasive.

In a similar vein, the FDIC asserts that because *Sahni* held that section 1821(d)(2)(G) preempts state statutes requiring prior consent or approval, contractual obligations must also be preempted. In support of its claim, the FDIC cites *Norfolk & Western Railway Co. v. American Train Dispatchers' Ass'n*, 499 U.S. 117 (1991), which reasoned that a "contract has no legal force apart from the law that acknowledges its binding character." *Id*. at 130. As the *Sharpe* and *Waterview* decisions demonstrate that FIRREA acknowledges the "binding character" of pre-receivership contracts, our decision today in no way conflicts with *Norfolk*.

III

It is undisputed that the FDIC transferred Heritage's interest in the Al's Garden Art loan in contravention of the Agreement's consent and right of first refusal provisions. As section 1821(d)(2)(G)(i)(II) does not immunize the FDIC from breach of pre-receivership contract claims, we conclude that the district court did not err in rejecting the FDIC's claimed statutory defense and entering judgment against the FDIC for its breach of the Agreement.

**AFFIRMED.**

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent.  In my view, our prior opinion in *Sahni v. American Diversified Partners*, 83 F.3d 1054 (9th Cir. 1996) dictates the outcome of this case.  Because there is no principled distinction between preemption of a state statute and preemption of state common law, I would reverse the district court's decision.

This case involves the once familiar scenario of a failed bank that has been taken over by the Federal Deposit Insurance Corporation (FDIC) acting as receiver.  Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) to facilitate the takeover of failed banks by the FDIC.  *See Deutsche Bank Nat'l Trust Co. v. FDIC*, 744 F.3d 1124, 1128 (9th Cir. 2014).  By enacting this legislation, Congress sought to avoid a prolonged transition period during which bank depositors were deprived of access to their funds.  *See id*.  It was

Congress' intent that the FDIC be able "to move quickly and without undue interruption." *Id*. As part of FIRREA, Congress acted with the intent to impose "a broad limit on the power of courts to interfere with the FDIC's efforts." (citation and alteration omitted).

In *Sahni*, the plaintiff sued the FDIC, seeking to rescind the sale of certain limited partnerships that were sold by the FDIC as part of the liquidation of a failed bank. *See Sahni*, 83 F.3d at 1056. Plaintiff asserted that the FDIC's sale of the partnerships violated California Corporations Code § 15509, which specified that consent of all limited partners was required before disposing of the assets. *See id*. at 1059. We held that 12 U.S.C. § 1821(d), a section of the FIRREA statute, preempted the state statute requiring consent. *See id*.; *see also* 12 U.S. C. § 1821(d)(2)(G)(i)(II) (providing that the FDIC as receiver may "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer").

In this case, Plaintiff Bank of Manhattan, successor in interest to Professional Business Bank, seeks to prosecute a breach of contract action against the FDIC following the FDIC's takeover of a failed bank. That failed bank, First Heritage, had entered into a Loan Purchase Agreement with Professional Business Bank under which First Heritage acquired a 50% interest in a loan that Professional Business Bank made to one of its commercial customers. After Heritage Bank failed and was placed into FDIC receivership, FDIC sold the Loan Purchase Agreement as part of its liquidation of Heritage Bank's assets. Professional Business Bank asserted in its action that the FDIC's sale of the Loan Purchase Agreement without Professional Business Bank's

consent breached the Loan Purchase Agreement, which provided Professional Business Bank rights of consent and first refusal.

I cannot agree that the FDIC should be liable to Manhattan Bank for damages when FIRREA expressly provides that the FDIC may transfer assets without consent as part of its liquidation of a failed financial institution. *See* 12 U.S.C. § 1821(d)(2)(G)(i)(II). More particularly, as we recognized in *Battista v. FDIC*, 195 F.3d 1113, 1116 (9th Cir. 1999), even when the FDIC has completely repudiated a contract, damages are limited to "actual direct compensatory damages" rather than the anticipatory damages represented by a right of first refusal. *See* 12 U.S.C. § 1821(e)(3)(B) (clarifying that the phrase "actual direct compensatory damages does not include . . . damages for lost profits or opportunity").

I am not persuaded by the majority's reliance on *Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir. 1997). *Sharpe* did not involve the provision of FIRREA we address in this case, *i.e.*, the ability of the FDIC as receiver to transfer assets without approval. *See id*. at 1154 (addressing the issue of whether 12 U.S.C. § 1821(j) deprives the court of jurisdiction over plaintiffs' claim). In addition, the plaintiffs in *Sharpe* had, before the receivership, fully performed their obligations under the contract with the bank. *See id*. at 1152 ("Pursuant to the settlement agreement, the Sharpes delivered a reconveyance of the debtor's deed of trust and the debtor's promissory note to Pioneer Bank"). Despite the bank's obligation to pay the Sharpes $510,000 via a wire transfer once the documents were delivered, the bank tendered payment in the form of two cashier's check, which the FDIC refused to honor after the bank was seized by bank regulators

on the same day payment was tendered. *See id*. at 1151–52. It was in this context, completed performance of a contract, that we allowed plaintiffs' claims to proceed. Nothing in the holding or reasoning of *Sharpe* supports the notion of judicial interference with the transfer of assets as expressly permitted by 12 U.S.C. § 1821(d)(2)(G)(i)(II). And nothing in the holding or reasoning of *Sharpe* calls into question the provision of 12 U.S.C. § 1821(e)(3)(B) precluding the award of damages for lost profits or opportunity, such as the right of first refusal at issue in this case. Indeed, we have repeatedly emphasized the limited holding of *Sharpe*. *See Battista*, 195 F.3d at 1119 (distinguishing *Sharpe*); *see also McCarthy v. FDIC*, 348 F.3d 1075, 1078, 1081 (9th Cir. 2003) (describing *Sharpe* as an "unusual case" "arising out of a breach of contract fully performed by the aggrieved party but not repudiated by the receiver"); 1077 (characterizing *Sharpe* as arising in a "different context [ ] and . . . not controlling"); *Deutsche Bank*, 744 F.3d at 1135 ("Given that we have limited *Sharpe*'s reach even in the administrative exhaustion context, it would be illogical for us to expand *Sharpe* to more substantive provisions, such as 12 U.S.C. § 1821(d)(11), that were not at issue or addressed in *Sharpe*. . . .") (citations omitted); 1137 (limiting *Sharpe* to its particular facts). It is particularly telling that the decision in *Sharpe* did not even attempt to distinguish *Sahni*.

Similarly, the case from the D.C. Circuit cited in *Sharpe*, *Waterview Mgmt Co. v. FDIC*, 105 F.3d 696 (D.C. Cir. 1977) does not grapple with our decision in *Sahni*. Rather, it relegates our precedent to a footnote suggesting that the partnership status of the bank's interest is determinative. *See id*. at 700 n.3. Neither does *Waterview Mgmt*. account for the limitation in 12 U.S.C. § 1821(e)(3)(B) precluding liability for lost profits or opportunity.

Because *Sahni* is inconsistent with the majority's holding, and because neither *Sharpe* nor *Waterview Mgt.* addresses the rationale of *Sahni* or the prohibition on damages for lost opportunities set forth in 12 U.S.C. § 1821(e)(3)(B), the majority's reliance on this trilogy of cases as representing a clear statement limiting FIRREA's preemption is simply not compelling. Rather, we have consistently taken a contrary view, acknowledging the broad powers conferred upon the FDIC in FIRREA and the corresponding limited reach of courts in this arena. *See Sharpe*, 126 F.3d at 1154; *see also McCarthy*, 348 F.3d at 1079 ("[T]he § 1821(d) jurisdictional bar is not limited to claims by creditors but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver, including debtors' claims"); *Deutsche Bank*, 744 F.3d at 1128 ("Congress granted the *FDIC broad powers* in conserving and disposing of the assets of the failed institution. To enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a *broad limit on the power of courts* to interfere with the FDIC's efforts.) (citation and alteration omitted) (emphases added).

Finally and significantly, allowing option holders to sue the FDIC for damages due to lost opportunities is at cross purposes with the heart of FIRREA. *See United States v. Banks*, 506 F.3d 756, 763 (9th Cir. 2007) (interpreting a statute in the context of its purpose). It is well known that "Congress' core purposes in enacting FIRREA [were] to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks." *McCarthy*, 348 F.3d at 1079; *see also Deutsche*

*Bank*, 744 F.3d at 1128 (noting Congress' intent that the FDIC be able "to move quickly and without undue interruption").   Allowing breach of contracts actions to proceed against the FDIC outside the strictures of FIRREA would bring the windup of the affairs of failed banks to a screeching halt, pending the outcome of litigation.  This result is the very antithesis of the limitation on court involvement contemplated by Congress.  *See Deutsche Bank*, 744 F.3d at 1128.

In sum, because no principled basis exists upon which to distinguish our precedent as set forth in *Sahni*, because *Sharpe* is a unique case that is limited to its particular facts, because FIRREA does not countenance damages actions for lost opportunities, and because allowing a breach of contract action against the FDIC would be contrary to Congress' purpose in enacting FIRREA, I would reverse the district court's ruling that FIRREA did not preempt Bank of Manhattan's claim.  I respectfully dissent.